## JOHN NOBLES v. VICTORIA FARMER, et al.

Western Section.   October 19, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

C. N. Frazier, Joe F. Odle, for plaintiff in error.

Peeler & Peeler, of Camden, J. C. R. McCall, of Huntingdon, and R. H. Rhodes, of Paris, for defendant in error.

OWEN, J. The controversy in this law suit is over a paper writing purporting to be the last will and testament of Simon Nobles, late citizen of Benton county, Tennessee. The document contested is in the following words:

"Simon Nobles Will.

"I Simon Nobles, being of sound mind and of disposing' ability, of my own fee will and accord, for and in consideration of the love and affection that I have for my son, John Nobles, and for the numerous attentions and care shown me in my declining years by my said son, the said, John Nobles, give and in the case of his death before mine, then to his heirs, to him all the moneys I may die seazed and possessed of, of any kind and character, notes, time deposits and in fact all of said money, which I may have or may be entitled to at the time of my death, after all my debts, if any I owe, are paid, and a monument is placed at my grave, that is the grave of me and my wife.

"It is my intention because of the many acts of kindness and attentions of my son, the said John Nobles, that he is to have all of the property, free from any and all encumberance and I make this deed of gift that he may have it absolutely or to his heirs, as above stated, provided the said John Nobles dies before I do.

"Witness my hand and signature on this the 19th day of September 1925.                              Simon Nobles.

"Witnesses, W. M. Blanks, J. F. Holloman, J. J. Garner.

"Sworn to and subscribed to before me this the 19th day of September, 1925. J. F. Dwody, N. P. Benton County, Tennessee. My Commission expires August 26th, 1929."

After this will was probated Victoria Farmer, a daughter of Simon Nobles, and certain other petitioners who were the children of two deceased daughters of Simon Nobles, filed their petition in the county court of Benton county seeking to contest the validity of said paper writing. They insisted that John Nobles, the beneficiary under said paper writing, was the son of Simon Nobles and a brother of Victoria Farmer and an uncle of the other petitioners. The ground of said contest were that Simon Nobles was of unsound mind at the time said instrument was signed; did not have the mental capacity to execute a valid will and that said instrument was procured through fraud and the undue influence of John Nobles. The county court held that the petitioners had a right to contest the validity of said will, and certified the contest to the circuit court of Benton county where the issues were tried three times by a jury of said county, the first two trials resulting in mistrials, the juries failing to agree, and on the third trial the jury returned a verdict against the will and found that Simon Nobles had made no will.

There was a motion for a new trial, containing many grounds, which was overruled, and an appeal prayed and perfected to this court and plaintiff in error John Nobles has assigned fourteen errors in this court, being practically the same grounds that are set out in the motion for a new trial.

It is insisted by the defendants in error that the plaintiff has no valid motion for a new trial because of the fact that said motion was not identified by the signature of the trial judge, and does not appear upon the minutes of the court. This insistence is overruled, for the reason that the motion for a new trial appears in the bill of exceptions, beginning at page 145 of the transcript and ending on page 147, and appears before the trial judge signed the bill of exceptions.

It is next insisted that there is no assignment that can be construed to mean or be equivalent to the requirement of the rules of this court which challenges the sufficiency of the evidence to support the verdict. The assignment of error to be effective for this purpose must aver that there is no evidence to support the verdict. Cherokee Packet Company v. Hilson, 95 Tenn., p. 2; Felton v. Clarkson, 103 Tenn., 457; and it is insisted that there is no assignment of error complying with Par. 4 of Rule 11 of this court which would enable this court to review the verdict of the jury or to examine the record to see if there is any material evidence to support the verdict.

Numbers of the assignments make the insistence that the verdict is not supported by the evidence or that the preponderance of the evidence is against the verdict or that the verdict is contrary to the law as charged by the court or is contrary to the legal evidence in the case and is contrary to the law as charged by the court, etc., etc.

However, in the third assignment it is stated that the court erred in overruling plaintiff's motion for a new trial because the verdict of the jury is not, nor was it, supported by any evidence, and the verdict is contrary to the evidence introduced in the case. For the benefit of the plaintiff we will separate this assignment and treat the last paragraph as mere surplusage and consider the appeal on the third assignment of error: That the verdict of the jury is not supported by any evidence. This question and the question of taxing John Nobles with the cost accrued in the lower court are the only two questions that can be considered on this appeal.

We are presented with a large record. Twenty-three witnesses testified. The plaintiff John Nobles did not testify; neither did any member of his family.

Simon Nobles died within a few days after he executed the paper that caused this lawsuit. He was more than ninety-four years of age at the time of his death. He was blind, practically deaf, helpless, and many witnesses testified that his mind was that of a small child, and had been for some years prior to his death. He had to be fed like a child; his clothing had to be changed as if he were an infant, and he was helpless. Victoria Farmer had lived in the State of Oklahoma for more than twenty years, but she returned to Benton county practically every year for some years prior to the death of her father and would spend from a month to two and sometimes three months with her father. About a year before he executed the instrument, called his last will, he told his daughter Victoria Farmer that he was going to deed his farm to his son John Nobles and the other property consisting of bank accounts and cash and time deposits he would give to his daughter and to his grandchildren.

It appears that John Nobles had lived upon a farm consisting of about 200 acres and owned by Simon Nobles for many years and for more than twenty years. He had not paid any rent for this farm and on the 24th day of August, 1925, Simon Nobles and his wife Mary Ann Nobles made a deed to this 200 acres of land to John Nobles, the consideration being love and affection, and in this deed Simon Nobles waived all of his claims for rents and also for all timber that John Nobles had cut and removed from said farm, and that John Nobles was not to account to Simon Nobles or his wife or their heirs or legal representatives for many years,

for timber or other things he had received or taken from said land. John Nobles was to continue to keep the grantor and his wife in their home, which was on the 200 acres, take care of and provide for the grantors during the remainder of their lives and not to charge for any care or attention that Nobles and his wife had rendered the grantors.

It appears that Simon Nobles died leaving his widow, Mary Ann Nobles, and she was living at the time this lawsuit was tried. She was more than eighty years of age and did not testify. The proof showed that she had been in bad health for a year or two before the death of her husband. Prior to the execution of the deed in August, 1925, Simon Nobles and his wife left the home they gave to John Nobles, and where John Nobles had lived for more than twenty-five years and moved with another relative where they lived for about one year, moving back to live with John Nobles only a short time before the will in controversy was executed. Who prepared this will does not appear. However, it does appear that John Nobles took his father Simon Nobles from the Nobles home to Big Sandy, a village in Benton county some three or four miles from the Nobles home, in an automobile, the day the will was executed. Nobles went out and procured all of the witnesses to sign his father's will. The witnesses say the will was lying on a table when they appeared on the scene. One of the witnesses was a Notary Public. He testified that John Nobles told him to bring along his seal; that he wanted him to take an acknowledgment. The Notary carried his seal to the house where Simon Nobles was seated and where he had been helped from the car and placed on the porch. The Notary guided Simon Noble's hand when the instrument was signed, and then proceeded to swear Nobles or at least his jurat shows that he swore the grantor or testator. At the time this instrument was executed the witness Blanks testified that Simon Nobles had forgotten that he had a daughter living named Victoria; that he thought John Nobles was the only one of his children living. Dr. J. M. Moses, a practicing physician of Benton county, a graduate of medicine who had rendered medical services to Simon Nobles for many years knew the frailties of Simon Nobles' body and mind. He saw Simon Nobles the day that this will was executed; talked to him, and this witness testified that, in his opinion, Simon Nobles was of unsound mind on that day and had been for sometime. Mrs. Annie Byars, a practical nurse who waited on Simon Nobles for a number of days and nights when he lived with Mrs. Gregson about a year before the will was executed, testified that Simon Nobles was like a baby in mind and body; that when she left the room he would cry and call for her just as would a very young child.

Numerous other witnesses testified as to the frailty of this man's mind; that he would eat a meal and in an hour afterwards say that he had not eaten and complain of the way that he was being treated. It appears that one of his daughters was killed in an accident within a short time prior to the execution of this instrument, and he would often call for this daughter after her death.

Without elaborating further upon the proof in support of the verdict we find material evidence to sustain the verdict of the jury. Of course there is a great conflict in the testimony of these numerous witnesses as to this old gentleman's mental condition, but the jury has settled this conflict and we are not called upon to weigh the evidence. If there is a scintilla of material legal evidence to support this verdict it is the duty of this court to approve the findings of the jury which have been approved by the trial court.

In addition to the weak mind of Simon Nobles, and his weakened physical condition, he had the mind of a child of very tender years. Furthermore, the jury was warranted in finding that this will was procured by undue influence.

"When a will is executed through the intervention of the person occupying the influential position to his advantage, the law casts upon him the burden of removing the suspicion by proof showing that the will was the free and voluntary act of the testator. Pritchard on Wills, Sec. 133. No. 3 Atkins v. Witners, 94 N. C., 581, 591, so stating the foundation of the rule, but holding that a presumption of fraud arises. 1 Bigelow on Frauds, 261-262."

The failure of John Nobles to give them any information touching these matters left the court and jury to conclude that the facts touching the preparation and execution of the will were unfavorable to him else he would have brought them out and given the court and jury the benefit of them.

Where a party has a will made in his favor under such circumstances as surround the making of this will the law requires that he show that he observe the utmost good faith in the preparation and execution of such will. This requirement of the law John Nobles has utterly failed to meet. Although knowing more about the preparation and execution of this will than anybody else he failed and refused to go upon the witness stand and tell the court and jury about it.

In the case of Railroad v. Hunter, 4 Higgins, 481, the court says: "it is well-settled law that competent and pertinent evidence within the knowledge and control of a party, which he withholds, is presumed to be against his interest and insistence." Citing Standard Oil Co. v. State, 9 Cates 618, 672; Fisher v. Insurance Co., 16 Cates, 450, 483; Dunlap v. Haynes, 4 Heisk., 476; Kirby v. Tallmadge, 160

U. S. 379 (40 L. E. 463) ; Pacific Const. Co. v. B. W. Co., 36 C. C. A. 153.

The assignments of error as to their being no material evidence, are overruled and disallowed. All other assignments are either too general for this court to consider or they raise the question as to the preponderance of the evidence and weight of the evidence which we cannot consider and they are all overruled and disallowed.
. By the second assignment it is insisted that the court erred in taxing John Nobles, the legatee under said paper writing and his surety on cost bond with the cost of the cause. In support of this assignment of error the cases of Lassiter v. Travis, 98 Tenn., 330; Bennett v. Bradford, 1 Cold., 471, and Bowden v. Higgs, 9 Lea, 347 are cited. In those cases the executor was allowed to pay the cost of his contest out of the general estate, but in all of those cases the executor was named in the will. In the instant case Nobles qualified as the administrator with the will annexed. The principle announced in the cases cited is that the nominated executor who acts in good faith, is entitled to have the costs and reasonable attorneys fees incurred by him in an unsuccessful effort to have the will probated, paid out of the assets of the estate, although he was a legatee and the only person interested in sustaining the will.

John Nobles was not named as executor in the instrument he undertook to set up as a will, and which instrument in one instance says it is a deed. Furthermore he had an opportunity to explain why this instrument was drafted and who drew it. He failed or refused to do this, and we are of opinion that he did not conduct this contest in good faith; that the instrument that his father signed was not signed in good faith and that the decisions of our Supreme Court cited by the plaintiff are not applicable to the facts of this case and it was proper for the lower court to tax John Nobles and his sureties with the costs of the cause. It results that the second assignment of error is overruled.

Learned counsel for the plaintiff make the following request, in their brief:

"Will the court take the testimony of the plaintiff's testimony in this record, and then the testimony of the defendants' witnesses; stand them up together and compare them, and after they have done so, we are certain that Your Honors' will conclude that there is no evidence of any character or kind that is material to have given the jury a right to have reached the decision against Simon Nobles' will."

As heretofore stated, we cannot take the testimony of the witnesses in a controversy submitted to a jury that "stand them up together and compare them" as requested by learned counsel, because that would be weighing the evidence to see which side has

the greater weight.  The jury saw all of the witnesses, their demeanor on the stand, and gave such weight and credit as they saw fit and proper under a charge of the court that is not complained of, and this verdict was approved by the trial judge who also heard the witnesses and saw the demeanor of the witnesses upon the stand, and who by his approval concluded that a preponderance of the evidence was in favor of establishing the contestant's claim that Simon Nobles did not have the mental capacity to execute a last will and testament and that said instrument was procured by fraud or through undue influence.

There is no error in the judgment of the lower court.  All of the assignments are overruled and the judgment of the lower court is affirmed.  The plaintiff in error and his sureties on appeal bond will pay the cost of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.