MILLARD CRAFTON, et al. v. DUDLEY E. HARRIS, et al.

Middle Section.   February 8, 1929.

Petition for Certiorari denied by Supreme Court, June 15, 1929.

J. T. Durham, of Gallatin, and W. A. Guild, of Nashville, for plaintiffs in error, Crafton, et al.

J. T. Baskerville, of Gallatin, and Andrew Carpenter, of Nashville, for defendants in error, Harris, et al.

CROWNOVER, J. This was an issue devisavit vel non upon the will of J. W. Crafton, deceased. The grounds of contest were that: (1) The testator was of unsound mind; (2) Undue influence; and (3) Illiteracy of the testator and his failure to understand the legal effect of the provisions of the paper-writing proposed to be probated as his will. It was submitted to a jury of Davidson county at the October Term, 1927 of the circuit court, before Judge A. B. Neil. The verdict and judgment were in favor of the will, from which the contestants have appeal in error, and have assigned eight errors, which when summarized are that the court erred:

(1) In not sustaining contestants' motion for peremptory instructions, as there was no evidence to support a verdict.

(2) In his charge to the jury, in refusing to charge special requests, and in excluding testimony.

It was conceded that a preponderance of the evidence showed that at the time the will was executed, the testator had sufficient mentality to make a will, and that there was no evidence of undue influence, so the determinative question in the case before us is whether the testator understood the legal effect of the provisions of said will.

The facts necessary to be stated are that the testator, who was raised in Macon county, Tennessee, while uneducated and unable to read and to write, except to sign his name mechanically, was a man of more than ordinary business ability and experience. He

had been in the saloon business until the passage of laws prohibiting the sale of liquor, when he then went into the real estate business in the City of Nashville, and with the aid of his wife accumulated property worth about $12,000. He had been an active, robust man in good health until four or five months before his death.

On May 4, 1922 he employed W. B. Ballard, a reputable lawyer of Nashville, to draft his will. Mr. Ballard dictated the will to his stenographer, Miss Schmidt, and after she had typewritten it Mr. Ballard then read it to the testator, who stated that it was just what he wanted, and also stated to the stenographer that he wanted his wife to have all of his property. The will was witnessed by J. W. Vaughan and W. B. Ballard. Mr. Vaughan testified that he saw Mr. Crawford sign as testator and that he was requested by Mr. Ballard, in the presence of the testator, to witness the will, but it was not read over in his presence to the testator. Mr. Ballard died in 1923, and the testator became worried about the matter as Mr. Ballard was a witness to his will, so on July 28, 1923 he went to his banker friend, R. E. Donnell, and requested him to read over said will to him, which was done, and the testator stated that was what he wanted. At the request of the testator Donnell made a notation on the bottom of the will that: "J. W. Crafton on this date acknowledged the execution of the above will and requested me to sign as a witness. R. E. Donnell." Crafton died on March 26, 1924, sixty-six years of age, and left a wife, Mrs. Lucy Crafton, but no children, surviving him.

By the terms of his will he provided that his debts be paid and that the residue of his estate be given to his wife, Mrs. Lucy Crafton, for her own use and benefit, with full power of sale, mortgage and disposition as she saw fit and proper, with a recommendation and request that if there be any of his estate left at her death that she divide it by will between his and her brothers and sisters then living. Mrs. Crafton died testate on February 9, 1926 but her will was excluded from the jury. J. W. Crafton's will was probated in the county court of Davidson county at its April Term, 1924, and this contest was instituted on July 26, 1926 by the brothers and sisters and nephews and nieces of the testator J. W. Crafton, with the result above stated.

We may say at the outset that we are of the opinion that none of the assignments of errors is well made.

The first and eighth assignments are that the court erred in overruling the contestants' motion for a directed verdict, as there was no evidence to support a verdict. These assignments are not well made, as there was material evidence that J. W. Crafton was of sound mind at the time that he made and published said will; that it was read over to him and he understood its contents, and that

it was properly executed; hence these assignments must be overruled.

On trial of issue of devisavit vel non it will be presumed, in the absence of any circumstances calculated to excite suspicion, that the testator had full knowledge of the contents of his will, where its proper execution and his power to make it have been satisfactorily proved. In other words, as a general proposition, when an instrument has been executed by persons of acknowledged capacity, it may reasonably be presumed, upon proof of the mere fact of execution, that he knew the contents of the instrument and intended it to have the effect which it imports upon its face.

But in cases of doubtful capacity, and where the testator is blind, illiterate, or unable to read, more is required than the mere legal presumption arising from the act of execution. In such cases, there must be proof, not only of the formal execution of the will, but likewise of the testator's knowledge of its contents. The presumption that the testator had knowledge of the contents of his will, is rebutted and the burden cast upon the proponent to show affirmatively that the testator fully understood and freely assented to the provisions of the will, or where any circumstances tending to excite suspicion have attended its execution. It is incumbent on the party seeking to establish the will to show that the testator was not imposed upon; and he knew, at the time of the execution of the paper, that it was his will and that he understood and approved of the disposition of his property therein contained. There must be full and satisfactory proof of actual knowledge of the contents of the will, but the law has not prescribed any precise, inflexible rule in respect to the mode or manner of proof by which this fact shall be established. Cox v. Cox, 4 Sneed, 81; Rutland v. Gleaves, 1 Swan, 197; Maxwell v. Hill, 89 Tenn., 584, 15 S. W., 253; Sizer's Pritchard Law of Wills and Executors, secs. 143 to 145.

"The existence of the fact that the testator cannot read, the law regards as a circumstance not only sufficient to excite suspicion, but to repel the presumption of knowledge of the contents of the will. It may be of more or less force, according to the facts of each particular case; and the degree of proof requisite to remove such suspicion, and to establish the knowledge of the testator must necessarily depend upon the circumstances of each case. All that in reason can be necessary is that it shall be made to appear to the entire satisfaction of the jury that the testator fully understood and assented to the provisions of the will; and this—like every other fact as to which the law has ordained no arbitrary technical rule respecting the species or measure of proof—may be established either by positive proof, or by circumstances of a nature to convince the

mind of its truth. In other words, it may be established just in the same way, as regards the measure and kind of evidence, as any other disputed matter of fact." See Cox v. Cox, supra.

The testator's declarations made at the time of the execution of the will with reference to the disposition of his property are competent evidence to show whether or not he fully comprehended and approved the will as written. See Maxwell v. Hill, supra; Sizer's Pritchard Law of Wills and executors, sec. 147.

The record shows that the testator was a good business man and had considerable experience in the real estate business. He went to his attorney, who had written many wills and had him to draft his will. It was read over to him at the time and the testator remarked that it was what he wanted. After the death of his attorney he then went to his banker and had him to read it over to him and he stated that it was just what he wanted and he requested the banker to sign as a witness.

The will is written in ordinary, everyday English and the meaning can be easily understood by a man who understands English. He gave his property to his wife with full power of sale and disposition, but with request or recommendation that if there was any left at her death that she should by will divide it between his and her brothers and sisters. The words when given their ordinary meaning explain themselves. After reading over the record we are of the opinion that the testator was a man of more than ordinary business ability and experience. He was careful and conservative, and there was material evidence that he understood the contents of his will, and appreciated the disposition of his property; hence there was material evidence to support the verdict.

The second assignment that the court erred in his charge to the jury that in order for the jury to find against the will it must find that the will was not read to the testator, and that he did not understand the disposition that it made of his property, is not well made because the court in several other places fully charged the jury on this subject. The complaint as to this charge is that the court should have used the word "or" instead of "and" when he said "the jury must find that the will was not read to testator **and** that he did not understand the disposition it made of his property." The court in several instances referred to this and stated specifically that if the jury found that the will was not read to the testator, and in other places stated that if he did not understand the disposition that it made of his property, then the jury should find against the will. We think that his charge sufficiently covered the proposition and this assignment is overruled.

The third and fifth assignments of errors go to the proposition that the court erred in his charge to the jury as to the weight to be

given the testimony of the witness, the stenographer, Miss Schmidt who had contradicted herself, and in the court's refusal to charge the special request that the jury should disregard the testimony of such witness who had contradicted herself, unless it found that there was a reasonable explanation for such difference in her testimony.

We think that these assignments are not well made for the reason that the court's charge was proper. The stenographer testified on the trial of this case that she had heard Mr. Ballard read over the will to the testator and that the testator remarked that it was as he wanted it. She was asked on cross-examination if she had not testified on a former trial that she did not know whether the will was read to the testator. She was asked why she had made that former statement and she replied that she was called up hurriedly and did not remember about the matter, but since then she had looked up her notes and had thought about the incident and remembered that she heard the will read over by Mr. Ballard for the testator at the time that it was executed.

The court charged the jury on this proposition that:

"If you should find that a witness had made a previous contradictory statement under oath, that is, a statement which directly contradicts her statement at the present trial, then her testimony on that point fails, even though you find and believe that she has not wilfully sworn to a falsehood. In determining which of her statements is true you may consider any explanation made by the witness as to her conflicting statements, whether such explanation is reasonable or unreasonable, corroboration or lack of corroboration by any fact or circumstance bearing upon the point at issue, and determine which of her statements be true or untrue."

We are of the opinion that this part of the charge in the light of the circumstances was sufficient and these assignments are overruled.

The fourth assignment is that the court erred in refusing to charge a special request to the effect that it was necessary that the proponent show by all or at least one witness of undoubted credit, that the testator had knowledge of and understood the contents of the will. We think that this assignment is not well taken because the court in several places in his charge stated this in substance to the jury; hence this assignment must be overruled.

The sixth and seventh assignments are that the court erred in excluding testimony as to the probate and contents of Mrs. Lucy Crafton's will, and as to the value of J. W. Crafton's estate held by his widow Mrs. Crafton at her death, and the value of that disposed of by her to different parties. After an examination of

the record and the issues involved in this case we think that evidence on these propositions was immaterial. What Mrs. Crafton did with the property at her death and its value, could not affect the issues in this cause. The fact that she may have devised most of the property to her brothers and sisters and only a small amount to his brothers and sisters cannot in any way be material to the issues in this case, hence these assignments of error must be overruled.

It results that all the assignments of error are overruled and the judgment of the lower court sustaining the will must be affirmed, and the cause remanded to the circuit court of Davidson county. It is ordered that the original will accompany the procedendo, with direction that proper orders be entered in that court transmitting said will to the county court for record. The cost of the cause including the cost of the appeal is adjudged against the plaintiffs in error and the sureties on their appeal bond.

Faw, P. J., and DeWitt, J., concur.