BURROW v. LEWIS et al., No. 1.—142 S. W. (2d) 758.

Eastern Section.    March 5, 1940.

Certiorari Denied by Supreme Court, June 29, 1940.

254

Burrow & Burrow, of Bristol, for plaintiff in error.

H. H. Haynes, Sr., J. D. Baumgardner, Curtin & Haynes, and Caldwell, Brown & O'Dell, all of Bristol, for defendant in error.

McAMIS, J. This is a will contest involving the will of John D. Thomas, who died January 14, 1939, at the age of ninety. The will

in contest was executed two days before his death. By its terms, all of his estate, consisting of real and personal property, goes to James T. Lockett and daughter, Mary Crandall Lockett Whicker. The jury found against the will and the executor, Robert Burrow, Jr., as proponent of the will, has appealed in error to this court assigning as error the action of the court in admitting over his objection certain evidence offered by contestants and complaining of portions of the court's charge to the jury.

John D. Thomas was never married and, at the time of his death, he had no living brothers or sisters. Contestants are children or descendants of children of half-brothers of Mr. Thomas, born to a second marriage of his father, William S. Thomas, after the separation and divorce of his parents.

By proper pleadings, contestants charge a conspiracy between members of the Lockett family to procure the execution of the will in question and assert that testator was mentally incompetent to make a will and was the subject of undue influence. The evidence upon the issues of the testator's mentality and undue influence is conflicting and it is not insisted that the court erred in submitting these issues to the jury.

■■ It is first insisted that the court erred in admitting evidence upon an immaterial issue intended to impeach Mrs. Lockett as a witness. Contestants insist that the evidence offered was material upon the issue of a conspiracy and that, for this reason, its admission was not erroneous.

In this connection it appears that contestants offered the testimony of the witness Beaver, the undertaker who went for the body of Mr. Thomas, to the effect that Mrs. Lockett requested everyone to leave the room except herself and Mr. Whicker, the husband of one of the beneficiaries, "so they could pray for the body." It is insisted, in behalf of contestants, that this evidence was competent and material as showing a desire on the part of Mrs. Lockett to further the conspiracy by placing the will under Mr. Thomas' pillow, where it was allegedly found later, in order to make it appear that the testator knew of, and carefully guarded, the will after its execution.

In behalf of proponent it is insisted that if a conspiracy in fact existed it was consummated with the execution of the will and what was thereafter done by the alleged conspirators is incompetent and immaterial for any purpose. Such is the general rule but, if, as charged, the Locketts entered into a conspiracy, the execution of a will was but an incident to the main purpose to secure the estate by improper, fraudulent and illegal means for the named beneficiaries. A will which did not appear to be recognized or known by the testator as an instrument of his conscious and rational mind and free from the suspicion of manipulation by interested parties would not accomplish this purpose. Anything which tended to

make the paper appear in the light of a valid act of the testator fell within the scope of the alleged conspiracy and, we think, this evidence was competent and material. Upon this theory, Mrs. Lockett having denied making this statement, we think the testimony of Beaver was competent as impeaching evidence, the purpose for which it was admitted.

Assignments V, VIII, IX and XVIII complain of the failure of the court to differentiate between the legal execution of a will of real estate and one disposing of personal property. The court charged the jury that the paper offered for probate could not operate as a will unless executed in substantial compliance with Code Section 8089, requiring that a will be witnessed and signed by two disinterested witnesses. It is insisted that this omission in the charge is erroneous and prejudicial for the reason that the jury may have found against the contestants upon the issues of mental incapacity and undue influence and based its verdict upon a finding that testator did not request the two subscribing witnesses to witness the paper as his will, and, since subscribing witnesses are not required in wills of personalty, this omission in the charge may account for the verdict against the will as to the personalty.

It appears from the testimony of the subscribing witnesses that they did not hear Mr. Thomas say anything while they were in the room for the purpose of witnessing the will. One of the subscribing witnesses testified that she heard Mr. Thomas make some sort of a gutteral sound when Mrs. Lockett asked him, in substance, if he approved the will as read and told him that the witnesses were present to witness it.

In charging the jury upon the necessity that the testator must have consciously assented to the paper as his will and requested the witnesses to subscribe their names thereto as subscribing witnesses, the court charged that such request or assent need not be by actual request from the mouth of the testator but might be implied if it be satisfactorily shown that the paper was read over to him when he was in possession of his senses and sufficiently alert mentally to hear and understand what was being read to him. Under this charge it is difficult to perceive how the jury could have rejected the will upon the ground that it was not properly witnessed if they believed from all the proof in the case that Mr. Thomas was of sound mind and free of any undue influence since in that event it appears without dispute that the formalities of the statute were complied with at least under the law as propounded to the jury in the court's charge. If the jury, on the other hand, found that Mr. Thomas was not sufficiently alert mentally to give his assent to the will as read in his presence or request its attestation by the subscribing witnesses, the paper offered for probate could not operate as a disposition either of real or personal property and proponent would not be harmed by the omission.

It is not necessary to the validity of a will of personalty that it be in the handwriting of the testator, or signed by him, or subscribed by witnesses, if the paper contain a disposition of property to take effect after death. However, the presumption of law is against the testamentary character of an instrument neither written nor signed by the deceased and the law requires proof affirmatively showing that such writing expressed the testamentary intentions of the decedent at the time it was written and that he adhered to such intention until his death, or until he became unconscious or otherwise mentally incapable of signing a will. The factum of such a will must be proved by two witnesses or the equivalent of that. See Taylor v. Taylor, 14 Tenn. App., 101, and authorities there cited.

We think proponent was not harmed by the court's omission to submit the paper offered for probate to the jury as an incompleted will of personalty. There was no proof overcoming the presumption against such a purported will and none to show that the paper offered for probate disposed of testator's estate according to his fixed purpose and intention adhered to up to the date of his death or until he lapsed into unconsciousness. No such issue was tendered to the court and jury and no proof was offered in support of such a contention on the part of proponent.

█ Where the charge, whether erroneous or not, does not mislead the jury or work any injury to the party complaining of it, as where it is evident they have not proceeded upon the ground stated in the charge, it is no cause for reversal. Dunlap v. Babb, 12 Heisk., 315; Southern Oil Works v. Bickford et al., 82 Tenn. (14 Lea), 651; Tinin v. Siner, 9 Tenn. App., 252.

█ The issues in this case appear to have been made up from pleadings carefully and considerately drawn. The trial of the case consumed several days and there appears never to have been the slightest suggestion that proponent sought to establish the will otherwise than as a written will signed by the testator and attested by two disinterested witnesses who signed as such at the request of the testator. At the conclusion of the court's charge, and although other requests were made upon other aspects of the case, counsel for proponent made no attempt to correct the erroneous assumption on the part of the court, if such it was, that proponent stood upon the proof alone that the will offered for probate was a written will signed by the testator and attested by subscribing witnesses. This assumption is clearly apparent from the court's charge and we think it was the duty of proponent to make his position clear when the case was submitted to the jury. If the court misconceived the theory and insistence of proponent, it was his duty to seasonably call such misconception to the court's attention. He should not be permitted to avoid the risk of a "split" verdict upon a finding that the will was good as to personalty and invalid as to realty, by

remaining silent until the jury returned its verdict against the will in its entirety.

This duty is clearly recognized in the case of National Hosiery & Yarn Co. v. Napper, 124 Tenn., 155, 135 S. W., 780, 783, where the court said:

"If the trial judge misconceived the contention of the plaintiffs in error, it was their duty, through their counsel, to protest at the time, and have the proper correction made, by special request or other form, before the case was finally given to the jury. The rule upon this subject is the same as that which applies when a trial judge, in his charge to the jury, assumes a fact ot be conceded, or makes an assumption in the charge based upon the course of the party in the court below and acquiesced in by that party at the time as correct, or that a certain contention is the real matter of contention between the parties. McColgan v. Langford, 6 Lea, 108, 116, 117; Hayes v. Cheatham, 6 Lea, 1, 7; Malone v. Searight, 8 Lea, 91; Slattery v. Lea, 11 Lea, 9, 12. It was held in the cases cited that it is the duty of the trial judge to narrow the issues as much as practicable in order to facilitate the labors of the jury.."

Upon the same reasoning, the court refused to reverse in Smith v. State, 159 Tenn., 674, 21 S. W. (2d), 400, and see Montesi v. Patton, 10 Tenn. App., 455, and Provident Life & Accident Insurance Co. v. Broome, 17 Tenn. App., 284, 66 S. W. (2d), 1041.

For the reasons indicated, we think proponent is not entitled to a reversal because of the omission of the court to differentiate between wills of personalty and wills of realty executed in conformity to the statutory requirements.

■ ■ By assignment VIII, a, it is insisted the court erred in charging the jury as follows:

"Also, because in this kind of a case there is no presumption of law that the testator understood the contents of this paper when read in his presence, you must be satisfied from the preponderance of the evidence, as to which the burden of proof rests upon those seeking to establish the will, that at the time it was executed, his mind was sufficiently alert and clear to understand the business in which he was engaged at the time of making his will."

It is first insisted that this charge was erroneous in that it invaded the province of the jury by referring to the case on trial as "this kind of a case"—that the effect of the use of this language was to tell the jury that in the case on trial the burden of proof rested upon proponent to show that at the time the will was executed the testator's mind was sufficiently clear to understand the consequences of his act. We agree with this construction of the charge but do not think, under the authorities to be cited, the charge complained of constitutes prejudicial and reversible error when applied in the light of certain salient and undisputed facts.

It is undisputed that Mr. Thomas was 90 years of age at the time of the execution of the purported will. He was sick and upon his deathbed and so blind that he could not see to sign his name. He had never made his mark in signing legal documents at any previous time, though the will appears to have been so executed. About an hour before the execution of this paper he failed to recognize his confidential business agent, Mr. Bowman, who remained in the room with him for some time and attempted to converse with him. According to his attending physician who was familiar with his condition, he had reached such a state of senility that in the opinion of the physician he could not have been mentally competent to execute a will at the time in question. It further appears that Mrs. Lockett, wife of one of the beneficiaries and mother of the other, had been acting as his nurse during an illness of approximately two weeks and that she arranged for the drafting of the will, the calling in of attesting witnesses and assisted in the manual execution of the paper, though she says this was all done at the solicitation and under the direction of the testator.

Applied to these undisputed facts, we think the court acted properly in peremptorily relieving the jury of the burden of applying the well established rule in such cases that the burden rests upon the proponent of the will to show that the testator comprehended the contents of the paper and the legal consequences of his act.

Ordinarily, upon proof of the due execution of the will, it will be presumed that the testator knew and approved its contents; but where the circumstances are such as to excite suspicion, the burden of showing affirmatively that the testator fully understood and freely assented to its provisions is cast upon the proponents.

This question was treated at length in the early case of Cox v. Cox, 36 Tenn. (4 Sneed), 81, 82, 87, and the rule enunciated that in cases of doubtful mental capacity, and where the testator is blind or unable to read, no legal presumption of capacity arises from the mere act of execution. The court said:

"In such cases, there must be proof, not only of the formal execution of the will, but likewise of the testator's knowledge of its contents. It is incumbent on the party seeking to establish the will to *satisfy the jury* that the testator was not imposed upon; that he knew, at the time of the execution of the paper, that it was his will, and understood and approved of the disposition of his property therein contained." (Italics ours.)

In the later case of Bartee v. Thompson, 67 Tenn. (8 Baxt.), 508, 512 (the court citing Cox v. Cox, supra), it was held that where the testator is blind or illiterate no presumption obtains that he knows the contents of the will from the mere fact that he executed it. The court said that in such cases there must be other evidence

of knowledge of the contents of the will before the proponent is entitled to a verdict establishing it.

The point was again considered in Crafton v. Harris, 9 Tenn. App., 561, 564, where it was said that the fact that the testator cannot read is regarded as a circumstance not only sufficient to excite suspicion but to repel the presumption of knowledge of the contents of the will, the court saying that in such cases it must appear to the entire *satisfaction of the jury* that the testator understood and assented to the provisions of the will. (Italics ours.) See also Nobles v. Farmer, 9 Tenn. App., 6, 11, and Condry, Executor, v. Coffey et al., 12 Tenn. App., 1.

It is insisted that this charge was erroneous for the reason that after proponent made out a prima facie showing of the due and legal execution of the paper which the court found sufficient to entitle the will to be read in evidence to the jury, the burden thereupon shifted to the contestants to show that the testator did not understand the will which was read aloud in his presence.

We have italicized above certain language used by the courts in treating this question, which, in the opinion of the court, indicates clearly that the burden continues with the proponent to dispel the suspicious circumstances attending the execution of the will.

In behalf of proponent it is insisted that the court, in the cases cited, only had in mind the burden resting upon the proponent to make out a prima facie case of the due and legal execution of the paper, including the burden of removing the doubt cast upon it by suspicious circumstances, and that the language we have underscored indicating that the question of the execution of the will is one for the jury to determine constitutes a "thread of error" running through these cases. We are unable to accede to this contention. See Sizer's Pritchard Law of Wills and Executors (2 Ed.), sections 143 and 145.

Reference is made in the briefs to the late cases of Pierce v. Pierce, 174 Tenn., 508, 127 S. W. (2d), 791, and Keys v. Keys, Tenn. App., 129 S. W. (2d), 1103, 1105.

The first of these cases dealt primarily with the degree and character of proof necessary to make out a case of testamentary incapacity. The question of the burden of proof touching the issue of the due and legal execution of the will was not considered.

In Keys v. Keys, supra, the court had under consideration the ordinary case where the usual presumption of testamentary capacity prevails and there was no insistence that the execution of the will was surrounded by such circumstances as to cast its authenticity in doubt. The question now raised was not made or considered in that case. It was held, merely, that where "the court determines upon the evidence offered by proponent, assuming it to be true, that the statutory requisites of such a will (Code, Sec. 8090) have been met

it then becomes, *prima facie*, a valid will'' which, in the absence of suspicious circumstances, entitles the proponent to read it in evidence to the jury. Italics ours.) Up to that point, the question is one for the court, as is always the case in the consideration of the competency of evidence.

We have not found a case holding that the court may finally determine the substantive issue of the execution of the will upon conflicting evidence. We are unable to see how the court could exercise such prerogative without violating the constitutional right of trial by jury and such a contention is, we think, unsound in principle. If the court passes upon the legal execution of the will only upon a prima facie showing of its due and legal execution and the jury passes upon it not at all no matter how conflicting the evidence, the result is a no man's land where neither the court nor the jury may exercise the prerogative of determining finally and upon its merits this important issue.

Assignments XIII, XVII and XIX all relate to the question of the burden of proof and we think are governed by the principles which we have attempted to review and apply in disposing of other assignments. As applied to the facts of this case, we think, no error has been shown in the charge to the jury upon this subject as it relates to the question of the legal execution of the will.

By assignments X and XV it is insisted the court erred in imposing upon proponent the burden of satisfying the jury by a preponderance of the evidence that the testator was possessed of ''testamentary capacity'' at the very time he executed the paper offered for probate.

After defining, at the outset of the charge, the issues to be submitted to the jury upon contestant's pleas of insanity and undue influence, the court charged the jury generally upon the subject of the burden of proof as follows:

''As in all other will cases, the burden of proof is upon the executor, or the proponent in this case, to establish the due and formal execution of the will, being the paper so as to amount to a will of the party signing it, as above stated. If the due execution of the will is proven by the proponent, and undue influence and unsoundness of mind are charged by the contestants, as it is in this case, then the burden of proof is on the contestants to establish such charge or charges subject to the variations hereinafter given you.''

Considering the excerpts taken from the charge and made the basis of assignments X and XV in the light of the above charge upon the general subject of the burden of proof and in connection with their context, we think the court had in mind the burden of proof upon the question of the due and legal execution of the paper in charging the jury that the burden rested upon proponent to show that at the very time the will was executed testator was possessed of ''testamentary capacity.''

262

The cases of Cox v. Cox, Bartee v. Thompson and cases of similar import, cited supra, do not go so far as to place the burden of showing testamentary capacity upon the proponent. They all deal with cases where the testator is aged, sick and infirm or unable to read and write by reason of blindness or illiteracy. In such cases it is held that proponent is onerated with the burden of showing that the testator comprehended the fact that he was about to execute his will and understood the contents of the paper. None of them hold that the burden of showing testamentary capacity rests upon proponent at any time or under any circumstances. Except when insanity is shown to have existed prior to the execution of the will this burden rests throughout the trial upon contestant. Smith v. Smith, 63 Tenn (4 Baxt.), 293. For this reason we think the charges complained of under these assignments are technically erroneous, but we are unable to see wherein proponent has suffered materially since, under facts appearing in the record without dispute, the burden of proof rested upon him to show that the testator comprehended the business in which he was engaged and understood the contents of the paper signed as his will. This implies necessarily a showing of soundness of mind at the very time the will was executed. The better practice is undoubtedly to maintain a clear distinction between the burden of proof upon the legal execution of the will in cases where, by reason of the peculiar facts appearing, the burden of showing a conscious execution of the will free from suspicious circumstances is placed upon proponent and the general burden of establishing insanity and undue influence which, as we have seen, continues throughout the trial to rest upon contestants. Cases might arise where because of disputed facts the failure to maintain this distinction would constitute material and reversible error but, for the reason stated, we think no such error is shown in this case.

Assignments XVI and XVII have been covered in principle and will be overruled without specific comment.

By assignment XIX it is insisted the court erred in declining to grant proponent's special request to the effect that a will in conformity with repeated statements of the testator is more likely to have been executed without undue influence than if contrary thereto. The substance of this request is contained in the general charge and we find the assignment without merit.

All the remaining assignments have been carefully considered and found without merit, and it results that all assignments are overruled and the judgment affirmed. The cause will be remanded for proper certification to the County Court of Sullivan County. Costs will follow the judgment and be paid out of the estate,

Portrum and Ailor, JJ., concur.