LEE MURRAY, Plaintiff-in-Error, v. ERNEST P. GARRISON, Executor of ROBERT HENSON MURRAY, Deceased, et al., Defendants-in-Error.—306 S. W. (2d) 679.

Western Section. December 20, 1956.

Petition for Certiorari Denied by Supreme Court May 3, 1957.

Rehearing Denied by Supreme Court June 7, 1957.

W. G. Cavett, Memphis, for plaintiff in error.

Freeman Marr, Louis Eubanks, Memphis, for defendants in error.

CARNEY, J. The plaintiff-in-error, Lee Murray, appeals from a judgment sustaining the last will and testament of his deceased brother, Robert Henson Murray. The will under contest was executed on October 20, 1955, in Shelby County, Tennessee. The deceased, Robert Henson Murray, was a widower and left no children. His next of kin was his brother, the contestant, Lee Murray. The testator was about 65 years of age and owned a small home worth about $3,000. His personal assets were valued at about $2,500.

Under the terms of his will he left all of his property jointly to Willie Owens, who was a truck driver and lived

in the house with him, and Ernest Garrison, a neighbor. Neither of the beneficiaries under the will were related to Mr. Murray. After the will was executed on October 20, 1955, it was left with Mr. Garrison for safe-keeping.

The will was probated in common form after which the plaintiff-in-error, Lee Murray, filed his petition of contest and the cause was transferred to the Circuit Court of Shelby County for trial on an issue of devisavit vel non. Upon the trial before the jury, the Circuit Judge charged the jury that as a matter of law the formal execution of the will had been proven and that there was no evidence to sustain the allegation of the contestant that the testator was not mentally competent to make a will.

The Trial Judge submitted to the jury only the question of whether or not the will was procured as a result of undue influence or duress practiced upon the testator by the beneficiaries, Willie Owens and/or Ernest Garrison. The jury found this issue in favor of the will and judgment was entered accordingly.

On this appeal the contestant, Lee Murray, has made two assignments of error. Assignment of error No. 1 insists that the Trial Judge erroneously overruled a motion of contestant to dismiss proponents' suit to prove the will in solemn form made after the proponents had closed their case on the grounds that the paper writing alleged to be the will had not been introduced and read to the jury.

Assignment of error No. 2 insists that the Trial Court was in error in ruling that as a matter of law the formal execution of the paper writing had been proven and in

failing to submit to the jury the question as to whether or not the testator fully understood and approved the paper writing as his will. The deceased, Robert H. Murray, could not read or write and his signature to the will was made by mark.

In disposing of the first assignment of error, we do not find it necessary to determine whether the paper writing must be read to the jury in the trial of an issue devisavit vel non. In the trial of the present case, before the cause was submitted to the jury for its deliberation, the Trial Judge did permit the proponents of the will to reopen their case and to read the alleged will to the jury. This he had authority to do, in his discretion, under the ruling of the Supreme Court of Tennessee in the case of Bellisomi v. Kenny, 185 Tenn. 551, 206 S. W. (2d) 787. See also Boone v. Citizens Bank & Trust Co., 154 Tenn. 241, 290 S. W. 39, 50 A. L. R. 1369. Therefore, assignment of error No. 1 must be respectfully overruled.

The only people present at the time the alleged will was executed were the testator and the subscribing witnesses, Mr. Louis Eubanks and Mr. Richard Ryan, both of whom are attorneys at law. Mr. Eubanks testified that he had represented Mr. Murray on one or two minor matters and that several days prior to the execution of the will he was in Mr. Murray's home and that Mr. Murray directed him to draw the will in question leaving his property to his two friends, Willie Owens and Ernest Garrison. Mr. Eubanks testified that he did not know Owens or Garrison prior to the time he drafted the will. According to Mr. Eubanks, he prepared the will in his office and several days later Mr. Murray phoned him to bring the will to his home on Arkansas Street in Mem-

phis, Tennessee. Mr. Eubanks asked his associate, Mr. Ryan, to accompany him to the home of Mr. Murray.

Mr. Eubanks further testified that when he entered the home of Mr. Murray, Willie Owens was present in the Murray home and that Mr. Eubanks, Mr. Ryan and Mr. Murray withdrew from the presence of Owens and went to the kitchen to discuss the will. Further, Mr. Eubanks testified that he read the will to Mr. Murray and that he instructed Mr. Murray as to the proper execution whereupon the testator declared it to be his last will and made him mark in the presence of the two witnesses, Mr. Eubanks and Mr. Ryan and that the witnesses, at his request and in his presence and in the presence of each other, signed their names as attesting witnesses. Further, Mr. Eubanks testified that on the day the will was signed, Mr. Murray was not drinking and was of sound mind and memory. The testimony of Mr. Ryan, the other attesting witness, substantially corroborated the testimony of Mr. Eubanks.

Further, Mr. Eubanks testified that he left the will after its execution with Mr. Murray and that at that time Mr. Murray told him he had some bonds which were payable to a nephew of Mr. Murray which he wished to have changed so as to have the bonds made payable to the beneficiaries under the will, Mr. Owens and Mr. Garrison. Mr. Eubanks testified that he promised to attend to the matter but due to the press of other business, he never got around to going to the bank with Mr. Murray to effect the change in beneficiary before Mr. Murray died in December, 1955.

The contestant did introduce proof of at least two lay witnesses to the effect that they thought the deceased,

Mr. Murray was crazy. There was other testimony on behalf of the proponents of the will to the effect that Mr. Murray, while addicted to intoxicants, was of sound mind and fully understood the extent of his property and the objects of his bounty. The Trial Judge, under the authority of Hammond v. Union Planters National Bank, 189 Tenn. 93, 222 S. W. (2d) 377, held that there was insufficient evidence to go to the jury on the question of the mental capacity of the deceased. Accordingly, he directed a verdict on this issue and instructed the jury not to consider the question of the mental capacity of the testator. There was no appeal from this action of the Trial Court and therefore, that question is now closed so far as the consideration of this appeal is concerned.

As we understand the second assignment of error, the contestant insists that where a testator cannot read or write and signs a will by mark that such fact in and of itself makes a question for the jury to determine whether or not the testator understood and approved the provisions of the will on an issue of devisavit vel non.

Where a testator can read and write and it is proven that he declared said paper writing to be his last will and signed the same in the presence of two witnesses who, at his request and in his presence and in the presence of each other, signed their names thereto as subscribing witnesses, there arises a presumption that the testator fully understood the contents of the paper writing. However, no such presumption arises when the testator cannot read and write.

From the early case of Cox v. Cox, 4 Sneed 81, at pages 82, 87, we quote as follows:

"In every case it is incumbent upon the party propounding a will to establish by satisfactory proof that the paper so propounded is the voluntary act of a capable testator. In ordinary cases, however, where the testator is shown to be of competent capacity, and there are no circumstances of suspicion surrounding the case, it is not necessary, in the first instance, to establish by proof that he had knowledge of the contents of the will. In such cases, the obligation imposed by law upon the party propounding the will is discharged by proof of the execution according to the forms and solemnities required by law. From this proof, the knowledge of and assent to the contents of the will are to be presumed. But in cases of doubtful capacity, and where the testator is blind or unable to read, more is required than the mere legal presumption arising from the act of execution. In such cases, there must be proof, not only of the formal execution of the will, but likewise of the testator's knowledge of its contents. It is incumbent on the party seeking to establish the will to satisfy the jury that the testator was not imposed upon; that he knew, at the time of the execution of the paper, that it was his will, and understood and approved of the disposition of his property therein contained. But although, in this class of cases, there must be full and satisfactory proof of the actual knowledge of the contents of the will, the law has not prescribed any precise, inflexible rule in respect to the mode or measure of proof by which this fact shall be established. The case of Moore v. Steel, 10 Humph. 562, does not touch this question. That case is to be understood as only laying down the rule in regard to the mere formalities of execution.

"The existence of the fact that the testator cannot read, the law regards as a circumstance not only sufficient to excite suspicion, but to repel the presumption of knowledge of the contents of the will. It may be of more or less force, according to the facts of each particular case; and the degree of proof requisite to remove such suspicion, and to establish the knowledge of the testator, must necessarily depend upon the circumstances of each case. All that in reason can be necessary is that it shall be made appear to the entire satisfaction of the jury that the testator fully understood and assented to the provisions of the will. And this—like every other fact as to which the law has ordained no arbitrary, technical rule respecting the species or measure of proof—may be established either by positive proof, or by circumstances of a nature to convince the mind of its truth. In other words, it may be established just in the same way, as regards the measure and kind of evidence, as any other disputed matter of fact."

Likewise, from Bartee v. Thompson, 8 Baxter 508, at pages 509, 513, we quote as follows:

"The fact that a will is executed by a testator by making his mark, is prima facie evidence of his inability to write or to read writing, and in such a case there ought to be evidence by the attesting witnesses in explanation of the manner of signing, or evidence of the knowledge of the contents of the will, to make the formal execution complete, or to entitle the plaintiffs to a verdict, if no counter proof is offered."

To the same effèct see the cases of Crafton v. Harris, 9 Tenn. App. 561; Nobles v. Farmer, 9 Tenn. App. 6; Condry v. Coffey, 12 Tenn. App. 1; Burrow v. Lewis, 24 Tenn. App. 253, 142 S. W. (2d) 758.

In the trial below, in addition to the testimony of the two subscribing witnesses that the paper writing was read to Mr. Murray, there was other testimony which showed that Mr. Murray understood the contents of this paper writing. Witnesses for contestant, Mr. and Mrs. Griggs who were also neighbors of Mr. Murray, testified that Mr. Murray told them that the beneficiaries, Willie Owens and Ernest Garrison, had taken advantage of him and threatened him and made him will his property to them. In addition, they testified that Mr. Murray had told them that he planned to change his will on the following day but he died on Sunday before he could change this will made on October 20, 1955. There wasn't any proof to indicate that Mr. Murray did not understand the contents of this will of October 20, 1955.

Therefore, in our opinion, the proponents of the will fully met the requirement that they prove that Mr. Murray understood the contents of the will. Since there was no proof in the record that Mr. Murray did not understand the contents of the will, we think His Honor properly did not submit this question to the jury for determination. Hence, assignment of error No. 2 must be respectfully overruled.

Therefore, the appeal is dismissed and the judgment of the lower court is affirmed. The plaintiff-in-error, Lee Murray, is taxed with the costs of this appeal.

Avery, P. J. (Western Section) and Bejach, J., concur.