W. Thomas GOODALL, Jr., Executor of the Estate of W. Y. McGlothlin, Deceased, Plaintiff-Appellees.

v.

Kenneth CRAWFORD et al., Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 12, 1980.

Certiorari Denied by Supreme Court Feb. 23, 1981.

Nathan Harsh, Kelly, Harsh & Kelly, Gallatin, Thomas W. Schlater, Nashville, for plaintiff-appellees.

Dennis W. Powers, McClellan & Powers, P. C., Gallatin, for defendants-appellants.

OPINION

CANTRELL, Judge.

W.Y. McGlothlin died August 18, 1978, having executed three mutually exclusive wills in a period of less than five years. He was eighty-two years old at the time of his death and was survived by fourteen children. His estate consisted of a farm and a rental house in Sumner County and some cash deposited in bank accounts.

Described in the record as an "individualist," Mr. McGlothlin apparently had at various times strong feelings about some or all of his children. In 1972 Mr. McGlothlin suffered a stroke and after that time he suffered from a loss of memory and a decreasing ability to take care of his personal needs. But from 1972 and extending through 1976 Mr. McGlothlin was involved

in several legal actions involving at least three of his children. The charges brought by Mr. McGlothlin against his children involved criminal charges for larceny, actions for debt, and actions for the return of specific property.

Mr. McGlothlin went to live with one daughter and her family in August of 1973 and remained there until October of 1976 when the burden of caring for him became too great for his daughter and she moved him to a boarding house. During his stay with his daughter he executed the first of the three wills on September 26, 1973, leaving the bulk of his estate to the daughter with whom he was living and her husband with minor bequests to two other daughters and one granddaughter.

On October 13, 1977 Mr. McGlothlin executed the second will leaving all of his property to the Baptist Hospital in Nashville. At that time he had returned to his home in Portland and was living alone, apparently bitter toward all of his children. He accused them of stealing from him, lying to him, and treating him badly. He told the attorney who drew the will for him that he was conscious of the fact that he was not leaving anything to any of his children but he was adamant in his intention to leave them out of his will.

In December of 1977 Mr. McGlothlin was taken by his son Leo to Indianapolis, Indiana where Mr. McGlothlin lived with one of his daughters during the week and sometimes with Leo on weekends. On March 23rd of 1978 the daughter with whom he had been living in Indianapolis brought Mr. McGlothlin back to Portland and left him. Two days later Leo came to Tennessee and took him back to Indianapolis to live with him.

During the third week in April of 1978 Mr. McGlothlin asked Leo to bring him back to Tennessee so he could change his will as, he said, he promised his daughter he would. On the 21st of April they came to Portland and went first to a doctor's office where Mr. McGlothlin got a statement from the doctor that in the doctor's opinion he was mentally competent to execute a will, and then they went on to Gallatin to the office of one of the lawyers that had represented him in some of the litigation with his children. He inquired of one of the young associates there about the fee he charged for making a will; upon learning the fee would be $25.00 he said that he could get it done cheaper by Mr. Goodall who had prepared the other two wills. He left and went to Mr. Goodall's office but learned that he was away on vacation. So he returned to the first office and had his will prepared after further negotiations over the fee. By this will he left all of his property to his son Leo and Leo's wife, Margaret. When he returned to Indianapolis two days later he took the will and after his death it was found in a lock box in a bank in Indianapolis.

He lived with his son Leo in Indianapolis for approximately three weeks after he executed the final will when he suffered a stroke around the first of May, 1978. He was in the hospital or a nursing home until his death on August 18, 1978.

In a jury trial involving these wills where the issues of testamentary capacity and undue influence were tried, the jury found that the will dated April 21, 1978 leaving all the property to Leo and his wife was the Last Will and Testament of Mr. McGlothlin. Under the Judge's charge that disposed of all of the issues since the execution of the last will revoked all prior wills.

The main issues on appeal relate to the jury charge of the Trial Judge. The first three issues will be considered together. They are:

I. The Trial Court erred in instructing the Jury that there was proper execution and that after the wills were read to the Jury, there was a legal presumption of capacity and showing a want of it by showing undue influence was on the contestants.

II. The Trial Court erred in failing to instruct the Jury as to Contestant's Special Request # 6 which stated: 'The presumption that WRIGHT YOUNG McGLOTHLIN had knowledge of the contents of his will is rebutted and the

burden cast upon the Proponent to show affirmatively that WRIGHT YOUNG McGLOTHLIN fully understood and freely assented to the provisions of the will, where any circumstances tending to excite suspicions have attended its execution.'

III.   The Trial Court erred in failing to instruct the Jury as to Contestant's Special Request # 7 which stated: 'in the case of doubtful capacity, and where the Testator is blind, illiterate, or unable to read, more is required than the mere legal presumption arising from the act of execution.   In such cases, there must be proof not only of the formal execution of the will, but likewise, of the Testator's knowledge of its content.   The presumption that the Testator had knowledge of the contents of his will is rebutted to show affirmatively that the Testator fully understood and freely assented to the provisions of the will, where any circumstances tending to excite suspicion have attended its execution.'

The Trial Judge charged the jury that after the execution of the will had been shown the burden was on the contestants to show a lack of mental capacity or undue influence.   The appellants contend that under the circumstances of this case the burden should have remained on the proponents to show that the testator had the requisite mental capacity and was free of undue influence when he executed his will.

The issue here is between the general rule and an exception.   The rule and the exception were discussed in *Burrow v. Lewis,* 24 Tenn.App. 253, 142 S.W.2d 758 (1940):

> Ordinarily, upon proof of the due execution of the will, it will be presumed that the testator knew and approved its contents; but where the circumstances are such as to excite suspicion, the burden of showing affirmatively that the testator fully understood and freely assented to its provisions is cast upon the proponents.   24 Tenn.App. at 259, 142 S.W.2d 758.

In *Burrow v. Lewis,* the suspicious circumstances were these: A ninety year old

blind man on his deathbed executed his will by making a mark which was out of the ordinary for him; an hour before he executed the will he failed to recognize his confidential business agent; the chief beneficiary under the will who had been acting as his nurse for two weeks arranged for the drafting of the will and assisted with the manual execution of the paper.

■   In this case it is arguable, as the appellants so earnestly contend, that the circumstances surrounding the execution of this will should require the proponents to bear the burden of proving capacity and the lack of undue influence.   However, we are not prepared to say that the circumstances in this case require such a charge.   All of the witnesses that saw Mr. McGlothlin on the 21st day of April, 1978 (most of them disinterested witnesses) testified that he seemed to be of sound mind; he negotiated with the attorney drawing the will about the fee; he named Mr. Goodall as executor, knowing that he was executor in a prior will.   In short, he apparently knew what he was about and set out to do it with characteristic determination.

With respect to the question of mental capacity the Trial Judge's charge included these instructions:

> Now on the question of mental capacity, I charge you that the inquiry is whether the testator, that's Mr. McGlothlin who was the testator, at the time of making his will knew and comprehended what he was doing, though capacity to make a will may accompany a greater degree of mental imbecility.   Yet in order to support a will so made, it must be shown that the testator at the time of making the will had an intelligent consciousness of the nature and effect of his act, a knowledge of the property he possessed, and an understanding of the disposition he intended to make.

> But the law does not require that a person shall be able to dispose of his property with judgment and discretion.   It is sufficient if he understands what he is about.   The will is not valid unless the testator, who made the will, not only

intends of his own free will to make such a disposition but is also capable of knowing what he is doing, of understanding to whom he is giving his property and in what proportions and whom he is depriving of it.

The Trial Judge also charged contestants' Special Requests 1, 2 and 12:

1. In determining the mental capacity of Wright Young McGlothlin to make a will, it is proper to give consideration to his appearance, his conduct, declaration, conversation, and all other evidence of his mental condition both before and after execution of any will so long as such matters have a reasonable tendency to indicate his mental condition at the time of the execution of the will.

2. A will which at the time of its execution is made by a person who is not of sound and disposing mind is not valid. The test for determining if the person is of sound and disposing mind is whether at the time of making his will he had sufficient mental capacity to be able to: (1) To understand the nature of the act he was doing. (2) To understand and recollect the nature of and situation of his property and (3) to remember and understand his relations to his living descendants and those whose interests will be affected by the will. Mental incompetency to make a will must be shown to have existed at the very time the will was executed, although evidence of mental unsoundness before and after must be considered in determining the decedent's mental condition at the time the will was executed.

12. If the jury finds that on April the 21st, 1978, Wright Young McGlothlin did not have the necessary testamentary capacity or mental condition to make a will, then you must find that will totally void. If you find that on April the 21st, 1978, Wright Young McGlothlin did not know the contents of that will, then you must find that will totally void.

On the question of undue influence the charge included the following:

Now there's also an allegation from the contestants of undue influence. By undue influence, gentlemen and ladies, is meant subjecting the will of the other person to the will of the person who he's influencing. And it would not be considered as a matter of law that attachments of kindness or gifts, love and affection, would be a fraud or would be an influence that within itself would be sufficient within the law to show that undue influence was used. The mere doing of those things, of being kind, of being attached to one, of being appreciative and showing appreciation as a matter of law within themselves would not be sufficient to carry with it the insinuation or the charge of undue influence.

In other words, undue influence is where a person becomes so subject to the will and dominance and influence of another that the person is so influenced that he is under the domination and control of another to such an extent that he does the things that otherwise he would not have done while acting as a free agent. And if the preponderance of the proof shows that the will was made because of undue influence, then such would not be a last will and testament and you should so find.

The charge also included the contestants' Special Request 9, 10 and 15:

9. In determining the issue of undue influence you may consider, among other things, evidence which answers these questions: (1) Do the provisions of the will prefer strangers in blood to the natural objects of the decedent's boundary. (2) Does the will unduly benefit the chief beneficiary thereof. (3) Is there a variance between the terms of the will and the expressed intentions of the testator. (4) Was there an opportunity afforded by the chief beneficiary's relationship to the decedent to influence the decedent. (5) Was the decedent's mental and physical condition such as to permit an overthrowing of his freedom of will, and (6) Was the chief beneficiary active in procuring it to be executed.

10. Strength of mind and condition of health of testator can be essential subjects of inquiry in passing on the question of undue influence in procuring a will.

15. Even if you find that the deceased Wright Young McGlothlin had the necessary capacity, mental capacity on April the 21st, 1978 to make a will, if you find that that will was brought about by the undue influence of Leo McGlothlin, then you must find that will totally void.

◼ Taking the charge as a whole we are satisfied that the jury was given a proper statement of the legal principles governing the issues they had to decide. The tone of the Judge's charge is direct and unmistakable: A will executed by a person who does not have the necessary testamentary capacity is void; a will brought about by undue influence is void.

The first three issues are without merit.

The fourth issue raised by the appellant is:

IV: The Trial Court erred in its failure to instruct the Jury as to Contestants' Special Request No. 8 which stated: 'a confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another. Also, you may look to the elements of dominion and control by the stronger over the weaker or showing of senility or physical and mental deterioration of the donor. If you find that a confidential relationship existed between WRIGHT YOUNG McGLOTHLIN, the decedent, and LEO McGLOTHLIN, and that LEO McGLOTHLIN was active in procuring the will and unduly profited from it; then the law presumes that the will was procured by the undue influence of LEO McGLOTHLIN unless he establishes by a preponderance of the evidence that the making of a will was not the result of undue influence.

In *Vantrease v. Carl*, 56 Tenn.App. 636, 410 S.W.2d 629 (1966), this Court, quoting from Phillips' Pritchard Law of Wills, Section 139, discussed the law with respect to the effect of a confidential relationship between a testator and a beneficiary under the will:

The mere fact that the beneficiary under a will occupies a relation of confidence to the testator will not in all cases necessarily create a suspicion of undue influence in the execution of the will, or throw the burden of proof on such beneficiary to show that the will was the spontaneous act of the decedent. The rule does not apply where it appears that the opportunity for a familiar and secret communication and intercourse between the testator and the beneficiary, at a time proximate to the execution of the will, is wanting; that the beneficiary took no advantage of his position or relation to influence the testator to his own interest beforehand, and did not participate either in the preparation or execution of the will. 56 Tenn.App. at p. 642, 410 S.W.2d 629.

◼ Therefore the contestants' Special Request No. 8 is not an accurate and complete statement of the law. Proof of a confidential relationship does not in all cases raise a presumption of undue influence and cast the burden on the beneficiary to disprove it.

Being convinced that the charge did not contain any reversible error, we find this issue to be without merit.

The fifth issue raised by the appellants is as follows:

V. The Trial Court erred in its failure to instruct the Jury as to contestants' Special Request No. 11 which stated: 'Injustice or unnatural nature of devise must be considered along with all other circumstances in determining whether WRIGHT YOUNG McGLOTHLIN was of sound mind or unduly influenced by beneficiaries of his will.

However the Court notes that the Trial Judge's charge included almost the identical language of this special request. Contestants' Special Request No. 5 which was given by the Trial Judge contained this language:

Although the authority to recognize the right of W. Y. McGlothlin to bestow his

property upon a stranger in blood if he so desires, the injustice or unnatural nature of the devise will be considered along with all the other circumstances to determine whether W. Y. McGlothlin was of sound mind. Therefore, a wholly unnatural will which disregards all ties of natural relationship and affection may be looked to by you the jury along with all the other circumstances as evidence of an unsound mind and that the testator acted under delusion.

To grant the contestants' Special Request No. 11 would have simply been a duplication of what the Trial Judge had already charged. Therefore this issue is without merit.

The final issue raised by the contestants involves the assessment of costs by the Trial Court against the contestants and not against the estate.

The adjudication of costs under the facts of each case is in the broad discretion of the trial judge and his action is reviewable only for manifest abuse. *Erin v. Brooks*, 190 Tenn. 407, 230 S.W.2d 397 (1950). The appellant does not point to any fact in the record which indicates that the Trial Judge abused his discretion in taxing the costs against the contestants. It is important to note that in this case most of the contestants were not seeking to establish one will versus the other but in order to take anything from this estate would have had to have all three wills declared null and void. In attacking the expressed will of the testator they were not seeking to benefit the estate but were seeking benefits for themselves. Therefore we are convinced that the Trial Judge did not abuse his discretion when he taxed the costs of this cause to them.

For all of the above reasons we are satisfied that the verdict of the jury and the judgment of the Trial Court should be affirmed. The cause is remanded to the Circuit Court of Sumner County for such other proceedings as are proper.

AFFIRMED AND REMANDED.

TODD, P. J., and T. MACK BLACKBURN, Special Justice, concur.