Mary Frances CRAIN, Emily Brown Sand, Paul Richard Brown, and Judy Brown Jackson, Contestants–Appellants,

v.

Carl Benton BROWN, Sr., Executor, Charles G. Brown, James Porter Brown, Jr., and Loy T. Brown, Proponents–Appellees.

In re In the Matter of the ESTATE OF James Porter BROWN, Sr., Deceased.

Court of Appeals of Tennessee, Western Section, at Nashville.

May 1, 1991.

Application for Permission to Appeal Denied by Supreme Court Sept. 3, 1991.

Thomas N. Bateman and Gregg A. Stinson, Clarksville, for appellants.

John S. Bryant, Nashville, for appellees.

CRAWFORD, Judge.

This is an appeal by contestants in a will contest. Contestants are Mary Frances Crain, daughter of testator, and Emily Brown Sand, Paul Richard Brown and Judy Brown Jackson, grandchildren of testator and children of Paul L. Brown, testator's deceased son. Proponents of the will are the testator's four surviving sons—Carl Benton Brown, Sr., also named as executor in the will, Charles G. Brown, James Porter Brown, Jr., and Loy T. Brown.

The complaint alleges that a paper writing dated September 13, 1982, previously admitted to probate in common form, is not the lawful will of testator because he lacked testamentary capacity and because he was unduly influenced by the proponents of the will. Proponents' answer denies the material allegations of the complaint and joins issue thereon.

James Porter Brown, Sr., was born on January 27, 1885. He founded Porter Brown Limestone Company, Inc., in Springfield, Tennessee in the 1920's and he and his five sons worked together in the business until Brown, Sr., at age 70, retired from the company in 1950. Paul L. Brown, the eldest son, acted as president of the company until he died in 1980.

In 1964, while living in Florida, Brown, Sr., executed a will which basically left his estate in trust for the benefit of his wife for her lifetime and which, after her death, equally divided the estate among his children and/or the heirs of a deceased child. In 1972, Brown, Sr., and his wife moved back to Springfield, Tennessee from Florida and in January of 1982, Brown, Sr.'s wife died. On September 13, 1982, the will in question was executed at Security Federal Savings & Loan Association in Springfield, Tennessee. Benton testified that his father decided he wanted to make a new will and that he requested Benton to get someone to prepare it. Benton Brown procured the services of Robert Crenshaw. Crenshaw is a Certified Public Accountant and a licensed attorney in Nashville, Tennessee. He had performed tax and legal work for the limestone company and various other family owned corporations since about 1958. Crenshaw had never had any business contacts with Brown, Sr., and was unsure he had ever actually met Brown, Sr., prior to the meeting to discuss the 1982 will.

Benton drove Crenshaw to Brown, Sr.'s home where Crenshaw discussed with Brown, Sr., what was desired in the will. Benton was present during this discussion,

but did not participate. During this meeting, Crenshaw recommended that Brown, Sr., execute a power of attorney to be used in case of any emergency. He also recommended, as part of a total estate plan, that Brown, Sr., consider making gifts of his stock in Porter Brown Limestone Company, Inc.

Approximately two weeks after the initial meeting, Crenshaw contacted Benton to make an appointment to return to Brown, Sr.'s home with the prepared will, and during this call he also discussed the terms of the will with Benton. On September 13, 1982, Benton drove Crenshaw to Brown, Sr.'s home, where Crenshaw read the will to Brown, Sr., and explained it to him. The will was read to Brown, Sr., because Brown, Sr., had a problem with his vision. Following the reading and explanation of the will by Crenshaw, Benton drove Brown, Sr., and Crenshaw to the Springfield office of Security Federal Savings & Loan Association where the will was executed before Daryle Walker and Margaret Clark as attesting witnesses. The witnesses to the will and Jean Cooper, the notary public, who administered the oath and took the testimony of the subscribing witnesses in their affidavit were all employees of Security Federal. They were familiar with Brown, Sr., because he was a regular banking customer there. Brown, Sr., also executed a power of attorney appointing Benton as his attorney-in-fact which bears a date of September 14, 1982, but which is acknowledged before the same notary public, Jean Cooper. Benton testified that his recollection was that the power of attorney was executed on the date which is shown on the document.

The September 13, 1982, will consists of two pages with five numbered paragraphs. Paragraph 1 provides for payment of debts and taxes out of the residuary clause. Paragraph 2 bequeaths equally all the capital stock in Porter Brown Limestone Company, Inc., owned by Brown, Sr., at his death equally to his four surviving sons, Benton, Lloyd, Charles and Porter, Jr. Paragraph 3 gives all of his other real and personal property to his surviving sons and daughters in equal one-sixth shares. Para-

graph 4 gives $100 each to the three children of Brown, Sr.'s deceased son, Paul, and states that Brown, Sr., makes the distinction between Paul's children and his other sons and their children because of financial support given to Paul during his lifetime in certain business ventures. Paragraph 5 appoints Benton to serve as executor without bond, with the alternate executor to be Charles Brown.

After the will was executed, Benton placed the document in his personal lock box because Brown, Sr.'s lock box was too full to accommodate the paper writing. Benton subsequently burned the 1964 will. The contestants were never informed of the existence of the 1982 will until after Brown, Sr.'s death.

Crenshaw was not sure who paid for his services in preparing the will and power of attorney. Benton was under the impression that the limestone company paid for the services.

In 1982, 1983 and 1984, Brown, Sr., made inter vivos gifts of stock to the four surviving sons in equal shares. He stated to Calvin Smith, the secretary-treasurer of Porter Brown Limestone Company, Inc., that he was making these gifts in order to get the stock out of his estate and reduce his estate taxes.

The contestants conceded that Brown, Sr., possessed testamentary capacity. However, contestants contended that his age and physical condition was such that he was vulnerable to undue influence.

Brown, Sr., had previously undergone cataract surgery and his vision was sufficiently poor that he claimed a tax exemption for blindness on his federal income tax return. Daryle Walker, the manager of Security Federal Savings & Loan Association's Springfield office, and one of the witnesses to the will, testified that he did not recall Brown, Sr., having extraordinary difficulties with his vision. Benton Brown testified that his father was not totally blind and could read his wrist watch, get about the house, read his mail and keep up with his utility bills, monthly bank statements and cancelled checks. Brown, Sr.'s

next door neighbor testified that Brown, Sr., held things up close in order to see them, but was able to see them. Brown, Sr.'s banker at Commerce Union Bank testified that Brown, Sr., was not totally blind and was able to sign documents at the bank. Mr. Head, a Springfield merchant, testified that Brown, Sr., saw well enough to measure the dimensions of a dishwasher which was sold to him in July of 1987. Jean Cooper, the notary public involved with the will and power of attorney and an employee of Security Federal, testified that she waited on Brown, Sr., regularly for a period of years before and after the execution of the will and although she knew he had some vision problems she did not know that he was "legally blind." Brown, Sr.'s physician testified that although Brown, Sr., was considered legally blind he was not totally blind and was able to read some with glasses. Calvin Smith, the secretary-treasurer of Porter Brown Limestone Company, Inc., testified that Brown, Sr., could see to read tax documents if he held them up close. Emma Jean Reynolds, Brown, Sr.'s housekeeper from May of 1978 until his death in April of 1988, testified that Brown, Sr., was able to spray fruit trees, pick fruit, go to the mailbox daily and read his mail and his wrist watch. Brown, Sr.'s physician testified that Brown, Sr. had a "moderate hearing deficit" and that he wore a hearing aid in his right ear "satisfactorily."

Other witnesses testified that Brown, Sr., wore a hearing aid and he could hear and understand and they had no difficulty communicating with him. He was generally described as active and independent for his advanced age and lived alone after his wife's death in 1982 until he entered a nursing home for the last three months of his life. He would participate in grocery shopping when people would drive him to the store and he managed his own bank account. He went to the courthouse in 1984 to vote in the presidential election and he was generally known by his friends and acquaintances as very strong willed and independent minded. His physician testified that in 1982 he was "not weak and feeble" and that his judgment was not impaired.

The first issue presented for review is whether the trial court erred by admitting testimony which was irrelevant and which newly discovered evidence shows is false.

Contestants assert two points: first, the trial court erred by admitting irrelevant evidence; and, two, that the trial court erred by not granting a new trial based on newly discovered evidence.

■ This issue is directed to the testimony of Calvin Smith, a witness for the proponents, elicited on direct examination. Smith was formerly secretary-treasurer of Porter Brown Limestone Company, Inc., and was chief financial officer for the company. We quote from the transcript:

Q. Can you compare for us, Mr. Smith, the financial condition of Porter Brown Limestone Company in September of 1982 to what it was in December of '88 at the time of the sale to American Limestone—

MR. BATEMAN: I object to that as not being relevant to this lawsuit. It's a collateral issue that really has nothing to do with this lawsuit.

THE COURT: Overrule the objection. You may answer the question.

THE WITNESS: 1982, along in '82, Porter Brown Limestone Company was near bankruptcy.

A deal had been made by the past president, who was deceased, that was not good. And at this stage of the game, the company had to do some drastic changes in order to protect the company from going bankrupt.

BY MR. BRYANT:

Q. What kind of changes, Mr. Smith?

A. Well, back at that time our—I can definitely tell you, we were paying approximately $186,000 a year to Commerce Union Bank just to carry stockpiles.

And management had to take a cut in salary and employees had to do without a raise for a year that we just had to stop something and get it under control or we would lose the whole thing.

Contestants contend that the evidence was irrelevant because it had been previously ruled irrelevant by the trial court. They assert that in pretrial discovery proceedings they issued a subpoena *duces tecum* to Crenshaw requesting financial information of Porter Brown Limestone Company, Inc., for the years 1979 through 1988 and the proponents sought a protective order from the court on the grounds that the information sought was irrelevant. Contestants further assert that the court granted the protective order and refused to allow them to obtain the financial information ruling that it was irrelevant.

Proponents argue that the trial court granted the protective order because the subpoena *duces tecum* was "overly broad and oppressive" and the trial court specifically stated in its order that the granting of the protective order would not prejudice the contestants' right to seek "specific documents which may be relevant or calculated to lead to evidence admissible with respect to the issue...." The financial statements were never sought after this order.

Proponents assert that Calvin Smith's testimony was relevant because it was made relevant by evidence introduced at trial by the contestants over proponents' objection. This evidence was the estate tax return and an included schedule of estimated net distribution to the heirs. Contestants' counsel questioned Crenshaw about the estimated net gifts to each of the beneficiaries as shown on the return schedule in an effort to show that the disparity in the amounts of estimated net gifts to the heirs was evidence of undue influence. The proponents argue that this testimony made relevant the value of the stock in 1982 when the will was executed because the estate tax return showed the value of the stock when it was sold to American Limestone, Inc., which value was greatly in excess of what the stock was worth in 1982.

Rule 401, Tennessee Rules of Evidence, states:

**Rule 401. Definition of "relevant evidence".**—"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The trial court correctly ruled that the evidence in question was relevant.

Contestants next assert that should the questioned trial evidence be ruled relevant and admissible the trial court erred in denying them a new trial on the ground of newly discovered evidence.

In support of their motion for a new trial, contestants offered into evidence audited financial statements of Porter Brown Limestone Company, Inc., for the year 1982 and other years. They also presented the affidavit of Dr. J.F. Burney, of Austin Peay State University, as an expert witness. After going into much detail concerning the financial statements, he gave the opinion that the limestone company was in good financial condition in 1982 and was not near bankruptcy. Contestants argue that this testimony directly contradicts the testimony of Calvin Smith and the trial court should have granted a new trial so that the jury could consider this evidence.

Generally, in order for a party to obtain a new trial based on newly discovered evidence, it must be shown that the evidence was discovered after the trial, that it could not have been discovered earlier with due diligence, that it is material and not merely cumulative or impeaching, and that the evidence will probably change the result if a new trial is granted. 20 Tennessee Jurisprudence, New Trials §§ 6, 7, 8, 9 and 10.

Contestants assert that the evidence was discovered after trial and could not have been discovered before trial because of the protective order issued by the trial court. This assertion is not supported by the record. The record indicates that the contestants issued a subpoena *duces tecum* seeking a myriad of material concerning the limestone company and the individuals involved in this case, but did not specifically seek audited financial statements. The trial court, in ruling on the motion for a protective order, found that the subpoena *duces tecum* was overly broad and oppressive. The trial court specifically stated

that the protective order would not prohibit the contestants' right to seek "specific documents which may be relevant or calculated to lead to evidence admissible...." There is nothing in the record to indicate that contestants specifically sought the audited financial statements.

As we previously noted, the Calvin Smith testimony objected to by contestants was made relevant because of previous evidence introduced by the contestants. The real issue in this case was whether Brown, Sr., was subjected to undue influence in the making of the 1982 will and the disposition of his property thereunder to the extent that it was not his last will and testament. The value of the stock in the limestone company was a collateral issue and a new trial is not warranted on newly discovered evidence that goes to a collateral matter only. See *Patterson v. Mitchell*, 9 Tenn. App. 662 (1929).

In *Brown v. Weik*, 725 S.W.2d 938 (Tenn. App.1983), this Court said:

A new trial will be granted on account of newly discovered evidence only when it is evident that an injustice has been done and a new trial will change the result. *Diversified Equities, Inc. v. Warren*, 567 S.W.2d 171, 175 (Tenn.App. 1976). In ruling on a motion for new trial on the grounds of newly discovered evidence the trial court is vested with wide discretion, and its denial of such a motion will not be disturbed by an appellate court unless it has abused its discretion. *Evans v. Evans*, 558 S.W.2d 851, 853 (Tenn.App.1977). In exercising its discretion, the trial court must consider the rights and diligence of the parties as well as the integrity of the court as a fact finding body.

725 S.W.2d at 947.

Under the record before us we cannot say that the trial court abused its discretion in denying contestants' motion for a new trial on the ground of newly discovered evidence.

The next issue presented for review is whether the trial court erred by refusing to submit to the jury contestants' special request for instruction number eight which states:

## CONTESTANTS' SPECIAL REQUEST FOR JURY INSTRUCTION NUMBER EIGHT

Undue influence can be proved either by direct or by circumstantial evidence. The Contestants may establish undue influence by proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act. Where the Contestants show the existence of suspicious circumstances such as a confidential relationship in combination with the beneficiary's involvement in procuring the will or in combination with impairment of testator's mental capacity, there arises the presumption of fraud or undue influence which the Proponents of the will must overcome by a preponderance of the evidence.

Some suspicious circumstances which may be relied upon to establish undue influence are:

1. The existence of a confidential relationship between James Porter Brown, Sr., the testator, and beneficiary, Carl Benton Brown, Sr.;

2. James Porter Brown, Sr.'s physical or mental deterioration;

3. Carl Benton Brown, Sr.'s active involvement in procuring the will;

4. Secrecy concerning the will's existence;

5. James Porter Brown, Sr.'s advanced age;

6. Lack of independent advice to James Porter Brown, Sr.;

7. James Porter Brown, Sr.'s blindness and deafness;

8. The unjust or unnatural nature of the will's terms;

9. Discrepancies between the will and Jams Porter Brown, Sr.'s express intentions; and,

10. The lawyer chosen by Benton Brown to prepare the will and power of attorney of James Porter Brown, Sr. had represented and been associated with the Proponents for many years prior to the signing of the will.

A review of the charge of the court reveals that the general substance of the

first paragraph of the special request was included in the court's general charge. The second paragraph of the special request was not a proper instruction for the jury to receive. Without going into great detail, it is apparent that the instruction makes statements of fact to the jury when the testimony is disputed. The jury must resolve the disputed evidence and establish the facts. The charge as written conveys to the jury the opinion of the trial court that these facts had been established. Such a charge is improper. Art. VI, Sec. 9, Constitution of Tennessee; see *Hooper v. State*, 205 Tenn. 126, 325 S.W.2d 561 (1959).

The first paragraph of the special request was included in the general charge and the balance of the charge is an incorrect statement. The special request was properly excluded by the court. See *Austin v. City of Memphis*, 684 S.W.2d 624 (Tenn.App.1984).

■ Contestants third issue for review is whether the trial court erred by not requiring the proponents to show that Brown, Sr., had independent advice concerning the 1982 will.

Contestants argue that the trial court should have directed a verdict for contestants because a confidential relationship had been established between Benton Brown and Brown, Sr., which required proponents to overcome a presumption of undue influence.

■ For undue influence to invalidate a will, it must be such that it destroys the free agency of the testator—to the extent that the will, though nominally his or her own, is in reality that of another. *Matter of Estate of Depriest*, 733 S.W.2d 74 (Tenn. App.1986).

■ Undue influence may be presumed from a confidential relationship. *Richmond v. Christian*, 555 S.W.2d 105 (Tenn.1977), *Matter of Estate of Depriest*, 733 S.W.2d 74 (Tenn.App.1986). A person authorized to act on behalf of another by virtue of an unrestricted power of attorney has the confidential relationship with a person who executed the power of attorney. *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn. App.1989). The presumption of undue influence is rebuttable by proof of the fairness of the transaction established by a preponderance of the evidence. *Reynolds v. Day*, 792 S.W.2d 924 (Tenn.App.1990). A showing that the testator had independent advice is one way of showing the fairness of the transaction. *Richmond v. Christian*, 555 S.W.2d 105 (Tenn.1977).

Relying on *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn.App.1989), contestants first assert that a confidential relationship between Benton Brown and Porter Brown, Sr. existed by virtue of the power of attorney executed by Brown, Sr., appointing Benton Brown as his attorney in fact. The record indicates a dispute as to when the power of attorney was executed. The date the power of attorney bears indicates that the power of attorney was not a valid instrument at the time the will was executed. There is certainly proof in the record from which the jury could have found such to be the case. Moreover, the record contains proof that the power of attorney was not utilized by Benton Brown until some years after its execution and that Brown, Sr., continued after the execution of the will and the power of attorney to handle his own business affairs. In *Kelly v. Allen*, 558 S.W.2d 845 (Tenn.1977), our Supreme Court held:

... [T]he normal relationship between a mentally competent parent and an adult child is not per se a confidential relationship and raises no presumption of the invalidity of a gift from one to the other. In order for such a presumption to arise there must be a showing that there were present the elements of dominion and control by the stronger over the weaker, or there must be a showing of senility or physical and mental deterioration of the donor or that fraud or duress was involved, or other conditions which would tend to establish that the free agency of the donor was destroyed and the will of the donee was substituted therefor. In such cases the rules require the application of the presumption and the rule of independent advice comes into play.

558 S.W.2d at 848.

There was proof in the record that Brown, Sr., had possession of his mental faculties, was strong willed and exercised

independent judgment concerning his business affairs. He continued to manage his own affairs for some years after the execution of the will. There was ample evidence in the record from which a jury could find that there was no undue influence exerted upon Brown, Sr., and that the will presented for probate was a result of his free act and deed.

▮ The last issue presented for review is whether the trial court erred by not granting contestants' motion for directed verdict because there was no proof that Brown, Sr., had knowledge of the contents of the 1982 document.

▮ The rule for determining a motion for directed verdict requires the trial judge and the appellate courts to look to all of the evidence, take the strongest, legitimate view of the evidence in favor of the opponent of the motion and allow all reasonable inferences from it in his favor. The court must discard all countervailing evidence and if there is then any dispute as to any material, determinative evidence or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Maddux v. Cargill, Inc.*, 777 S.W.2d 687 (Tenn.App.1989). In *Goodall v. Crawford*, 611 S.W.2d 602 (Tenn.App.1980), the Court, quoting from *Burrow v. Lewis*, 24 Tenn.App. 253, 142 S.W.2d 758 (1940), said:

> Ordinarily, upon proof of the due execution of the will, it will be presumed that the testator knew and approved its contents; but where the circumstances are such as to excite suspicion, the burden of showing affirmatively that the testator fully understood and freely assented to its provisions is cast upon the proponents. 24 Tenn.App. at 259, 142 S.W.2d 758.

611 S.W.2d at 604.

The proof in the instant case is that Crenshaw, the attorney who prepared the will, read the will to Brown, Sr., because of Brown, Sr.'s failing eyesight. Subsequently Brown, Sr., appeared before two disinterested witnesses and declared the paper writing presented to them to be his last will and testament. During the ensuing years subsequent to the execution of the will, Brown, Sr. made equal inter vivos gifts to his sons which conformed to the intent expressed in his will. With this proof in the record, the trial court did not err in refusing to grant a directed verdict.

The judgment of the trial court is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants.

HIGHERS and FARMER, JJ., concur.