IN RE: ESTATE OF JESSIE HANEY, )
DECEASED. )
 )
MABLE YOUNG, ET AL, )
 )
  Plaintiffs/Appellants, )
 ) Jackson Circuit
 ) No.  1122
VS. )
 ) Appeal No.
 ) 01-A-01-9509-CV-00424
ARLENE BUSH, Individually, and as )
Executor under the Will of Jessie Haney, )
 )
  Defendant/Appellee. )

FILED

**February 9, 1996**

**Cecil W. Crowson
Appellate Court Clerk**

## IN THE COURT OF APPEALS OF TENNESSEE

## MIDDLE SECTION AT NASHVILLE


## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY

## AT GAINESBORO, TENNESSEE


## HONORABLE BOBBY CAPERS, JUDGE


James L. Bass
BASS AND BASS
Post Office Box 500
Carthage, Tennessee  37030
ATTORNEY FOR PLAINTIFFS/APPELLANTS


BOBBY JAMES ELLIS
P.O. Box 192
Gainesboro, Tennessee  38562
ATTORNEY FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED

      HENRY F. TODD
      PRESIDING JUDGE, MIDDLE SECTION

SAMUEL L. LEWIS, JUDGE, CONCURS
AND WILLIAM C. KOCH, JR., JUDGE,
CONCURS IN SEPARATE OPINION.

IN RE: ESTATE OF JESSIE HANEY,   )
DECEASED.   )
  )
MABLE YOUNG, ET AL,   )
  )
      Plaintiffs/Appellants,   )
  )   Jackson Circuit
  )   No. 1122
VS.   )
  )   Appeal No.
  )   01-A-01-9509-CV-00424
ARLENE BUSH, Individually, and as   )
Executor under the Will of Jessie Haney,   )
  )
      Defendant/Appellee.   )

O P I N I O N

This is a will contest in which the contestants have appealed from a jury verdict and judgment in favor of the will.

The deceased, Jessie Haney, died on February 14, 1994, at the age of 86.

The will of Ms. Haney was probated in common form by Arlene Bush, niece of deceased, sole beneficiary and executrix designated in the will. She is designated hereafter as the proponent. Thereafter a contest was filed by the captioned plaintiffs who will be hereafter designated contestants. The contest was duly certified to the Circuit Court for trial where a jury found in favor of the will and judgment was entered accordingly.

On appeal to this Court, the contestants present the following issue:

> Whether the presumption of the existence of a confidential relationship between the proponent of the will and the testator was rebutted by clear and convincing evidence of the fairness of the transaction, and whether the will was the free, voluntary and conscious act of the testator.

The proponent states that the only issue on appeal is whether the verdict of the jury is supported by material evidence.

The proponent, the niece of deceased, was the principal source of assistance to deceased and her husband during their declining years.  Proponent had authority to write checks on the bank account of deceased and attended to business for her.  She bought groceries, medicine, household necessities and paid various expenses, partly with her own funds.  The husband died on April 27, 1993, after the execution of the subject will.

Deceased suffered from arthritis, heart trouble, diabetes, inner ear trouble and high blood pressure, and required daily visits by health care nurses.

In November, 1990, deceased was hospitalized and treated for shortness of breath.  She was discharged November 25, 1990.  Thereafter she used a walker or wheel chair and was not able to do housework.  Her eyesight was impaired.

On January 4, 1991, proponent and deceased visited the office of Judge Robert L. Johnson where "they" told him to prepare a will and what to put in it.  Proponent had prepared a will for deceased, but deceased preferred to have her will prepared by Judge Johnson who had been her husband's lawyer and had done some legal work for her.  Judge Johnson instructed proponent and deceased to return later in the day when the will would be ready for execution.

Proponent and deceased departed, ate lunch and stopped at the store of the husband of proponent where deceased executed the will which proponent had prepared and a general power of attorney to proponent.

Proponent and deceased then drove to the office of Judge Johnson who brought the will he had prepared to deceased who remained in proponent's vehicle.  Judge Johnson read the will to deceased and summoned witnesses who witnessed the signing of the will by deceased, which read as follows:

> I Jessie Haney of R., #3 Gainesboro, Tennessee, hereby make my last will, revoking all previous wills and codicils.
>
> I will to Arlene Thomas Bush all of the property, both real and personal that I may own at the time of my death without limitation or exception.
>
> I have confidence that Arlene will allow my husband, Ellison Haney to use what he needs if he survives me.
>
> I nominate Arlene Bush as my executrix of my will and request no bond of her. . . .

The briefs of the parties do not discuss the issue of whether the undisputed facts establish a confidential relationship as a matter of law; and this issue will not be discussed in this opinion.

The issue as stated by appellants assumes the existence of a confidential relation which, if it exists, creates a presumption of undue influence unless the contrary is shown by clear and convincing evidence. *Matlock v. Simpson,* Tenn. 1995, 902 S.W.2d 384.

Contestants insist that the evidence in this case is insufficient to justify a finding by the jury of clear and convincing evidence to rebut the presumption of undue influence. There is evidence that deceased initially declined to sign a will prepared by proponent which named the husband of deceased as sole beneficiary if he survived deceased, and, instead, insisted upon a will prepared by her husband's lawyer. The lawyer received his instructions from "them" (proponent and deceased). There is no evidence as to which instructions were given by proponent and which were given by deceased. Deceased had ample access to independent legal advice from a lawyer of her selection. Before execution, the will was read to deceased by the lawyer. It was handed to her and she read it. After the execution of the will on January 4, 1991, deceased continued to live until February 14, 1994, a period of over three years, without executing any further testamentary instrument, even though during that three years, she resided at various times with various relatives.

Proponent testified:

Q. Who told Mr. Johnson what you wanted to talk about? Who initiated the conversation with Judge Johnson?

A. I talked and she did too.

Q. Both of you?

A. Yes.

Q. And so the two of you then told Mr. Johnson that she wanted to make a will, I assume?

A. Yes.

Q. And the two of you told Mr. Johnson what to put in the will, I assume?

A. Yes.

Q. And is what you and Mrs. Haney told Mr. Johnson, is basically what he did? Did he comply with your instructions?

A. Yes.

Q. To do the will?

A. Yes.

Q. As you and Mrs. Haney instructed him to do?

A. Yes.

. . . .

Q. Did Mr. Johnson give the will then to her?

A. Yes.

Q. And did she read it?

A. Yes, she did.

. . . .

Q. Okay, did you ever expel (sic) any influence over Jessie or make her do something she didn't want to do?

A. No, sir.

. . . .

Q. I am talking about the discovery deposition we took in your office on August 9, 1994 and your client is now testifying she couldn't remember who sat in the car and where. And I am

reading from page 26, in your deposition. I will start on page 25 on the question and your answer said, "And then we came back and Mrs. Haney sat in the car right up, right here and I went over to Mr. Johnson's office and Bob Johnson and Mildred Dennis got in the back seat of the car, they read this over to Mrs. Haney, the will and deed and she signed it right in the car. She did not get back out and go over there." Do you recall that testimony?

. . . .

Q. My question is, is this statement that you made on August 9, 1994 a true statement?

A. Yes.

Judge Johnson testified:

Q. I assume, based on your previous knowledge of Jessie Haney and your conversation with her that day, what would your opinion be, as to her mental state that day?

A. As to what?

Q. As to whether or not she knew what she was doing and understood what she was doing?

A. There would be no will here if I didn't think she was competent.

. . . .

A. There wasn't any problem or I would have detected it.

Q. If you had seen or sensed that Arlene Bush was trying to do something she shouldn't have done, you would have stopped the program right there?

A. Yes.

. . . .

Q. If you had in any way sensed that Arlene Bush was trying to impose her will on Jessie Haney that day, or if Jessie Haney wasn't mentally competent to execute a will, you would have been ethically bound to stop the proceeding right there, would you not?

A. It would make no difference about ethics, I wouldn't have drawn it.

Hillis Caruthers testified:

Q. All right, I am going to start with, did you know Jessie and Alex Haney?

A. Yes, sir. about thirty-five or forty years.

Q. All right, how would you categorize your relationship with them during that thirty-five or forty years?

A. Well, we had a good relationship.

Q. Were you good friends with them?

A. We were good friends with them.

Q. All right.

A. Me and Alex had cattle together and raised corn and tobacco together.

Q. Just very close friends in other words?

A. Close friends.

Q. And as a matter of fact, I believe you lived with them for awhile?

A. I lived in the basement of their house for five years.

. . . .

Q. Now, tell me what kind of will Jessie had as far as whether or not she let people tell her to do things she didn't want to do?

A. No. Now, Jessie didn't let nobody tell her to do nothing. There wasn't any forcing her into it. She done what she wanted to do.


Sue Salisbury testified:

Q. Did you know Jessie well enough to know whether or not she was a pretty strong willed person?

A. Yes, sir.

Q. And was she a pretty strong willed person?

A. Yes, sir.

Q. If Jessie wanted to do something, would she do it, generally speaking, if she were able to?

A. yes, sir.

Q. If Jessie didn't want to do something, could anybody convince her to do it, if she had set her head not to do it?

A. I don't think so.

Q. Thank you.

Access to independent legal advice is one method of overcoming the presumption of undue influence. *Crain v. Brown,* Tenn. App. 1991, 823 S.W.2d 187. This Court does not hold that the foregoing evidence is clear and convincing evidence rebutting the presumption of undue influence.

However, this Court does hold that the foregoing evidence was sufficient grounds for a jury to find clear and convincing evidence rebutting the presumption of undue evidence.

The Trial Court was not in error for denying a new trial for lack of clear and convincing evidence to support the verdict of the jury.

Contestants' brief states:

> While *Matlock vs. Simpson, supra,* p. 10, was decided by the Supreme Court on February 13, 1995, and this case was tried on March 16, 1995, in good faith the trial court charged the jury to apply the preponderance of the evidence standard as the requirement to overcome the presumption of undue influence arising out of confidential and fiduciary relationships, in accord with the cases decided prior to the opinion and in accord with the *Tennessee Pattern Jury Instruction -* Civil 11.60. *Matlock* overruled the preponderance of the evidence rule and established the correct standard of proof as the clear and convincing evidence rule. The Court can remand to the lower court for a proper application of the standard of proof to be applied.

Prior to February 13, 1995, the date of the filing of the opinion of the Supreme Court in *Matlock v. Simpson,* Tenn. 1995, 902 S.W.2d 57, the prevailing law in Tennessee was that the presumption of undue influence from confidential relation was rebuttable by a preponderance of the evidence. *Tennessee Pattern Jury Instructions,* Civil 11.60; *Reynolds v.*

*Day*, Tenn. App. 1990, 792 S.W.2d 924; *Taliaferro v. Green,* Tenn. App. 1981, 622 S.W.2d 829.

This case was tried on March 16, 1995, 31 days after the filing of the opinion in *Matlock.* Thus, the law announced in *Matlock* was applicable to the trial and decision of the present case. If the contestants had been aware of the *Matlock* decision, and if they had moved for a new trial on the ground of an error in the charge to the jury, this Court would be in position to remand for a new trial based upon the holding in *Matlock.*

Undoubtedly neither counsel nor the Trial Court was aware of the *Matlock* decision, for no special request was made for a *Matlock* charge, and the Trial Court charged as follows:

> Under the law, one who is another's attorney in fact on an unrestricted power of attorney has a confidential relationship with the one who executed the power of attorney. In such cases, undue influence is presumed and the burden of proof shifts to the recipient. The evidence necessary to overcome this presumption effects a confidential relationship is by a preponderance of the evidence.

The motion for a new trial filed on April 17, 1995, stated:

> 1. The proponent of the will did not by a <u>preponderance of the evidence</u> rebut the rule of the law that a presumption of a confidential relationship existed between Jessie Haney and Arlene Bush, because Jessie Haney had given Arlene Bush an unrestricted power of attorney.
>
> 2. The preponderance of the evidence showed the proponent exercised undue influence over Jessie Haney in the making of the will, because: 1) the will unduly benefitted the proponent; 2) the proponent was active in procuring the will; 3) the existence and the contents of the will were kept secret and kept in the possession of the proponent; 4) the proponent was in the presence of the maker of the will at all times during the events leading up to the actual execution of the will; 5) there was present at all times the opportunity afforded by the proponent's relationship to the decedent to influence her; 6) the decedent's physical health condition was deteriorating such as to permit an overthrowing of the freedom of will. (Emphasis supplied.)

The motion did not mention absence of "clear and convincing evidence" or a charge in regard thereto.

Under the circumstances, any error of the Trial Court in failing to apply the decision in *Matlock* was waived, and is not a proper ground of reversal.  T.R.A.P. Rule 3(e), *Potter v. Tucker,* Tenn. 1985, 688 S.W.2d 833.

The proponent suggests a finding of "frivolous appeal," but such is not deemed appropriate in the present case.

The judgment of the Trial Court is affirmed.  Costs of the appeal are taxed against the contestants.  The cause is remanded to the Trial Court for any necessary further procedures.

Affirmed and Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE, CONCURS

WILLIAM C. KOCH, JR., JUDGE,
CONCURS IN SEPARATE OPINION.