# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 29, 2001 Session

## THOMAS CLINTON WYNNS, III. v. RAE ANN CUMMINGS

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 99-0082-1     The Honorable Walter Evans, Chancellor**

---

**No. W2000-02156-COA-R3-CV - Filed December 28, 2001**

---

This case involves a dispute between Thomas Clinton Wynns, III ("Thomas") and Rae Ann Cummings ("Rae Ann"), the son and granddaughter of Mrs. Leola Wynns ("Leola"), concerning Leola's mental capacity and ability to manage her own affairs. Plaintiff, Thomas, holder of a power of attorney from his mother, filed a complaint against the defendant, Rae Ann, seeking to have Rae Ann turn over to him all of Leola's assets in possession of Rae Ann. Rae Ann filed an answer to the complaint and a petition for appointment of a conservator for Leola and for an injunction against Thomas from removing any more of her assets. After a nonjury trial, the trial court found that the court had jurisdiction to appoint a conservator for Leola; that the facts warranted the appointment of a conservator; that the power of attorney held by Thomas and a will executed by Leola in 1998 were void, and that the quit claim deed executed on April 22, 1999, in favor of Thomas, was also void. Thomas appeals. We affirm in part, vacate in part, and remand.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which and HOLLY KIRBYLILLARD, J., joined. ALAN E. HIGHERS, J. (not participating)

Harvey Gipson, Memphis, For Appellant, Thomas Clinton Wynns, III

Bruce A. Ralston, Memphis, For Appellee, Rae Ann Cummings

## OPINION

The plaintiff-appellant, Mr. Thomas Clinton Wynns, III ("Thomas"), filed his complaint on February 1, 1999, against defendant-appellee, Ms. Rae Ann Cummings ("Rae Ann")[1], requesting that the trial court order Rae Ann and/or her agent, Mr. Charles Sevier, Attorney at Law, to deliver all investment accounts, banking accounts, last will and testament and other personal papers of Ms. Leola P. Wynns ("Leola") to her son, Thomas. The complaint alleges that on or about October 28, 1998, Leola executed a durable general power of attorney naming Thomas as her true and lawful attorney in fact. This document dated October 28, 1998, was made an exhibit to the complaint and provides Leola's address as 4228 Trudy Street, Memphis, Shelby County, Tennessee. The complaint also alleges that Leola executed a revocation of durable power of attorney revoking any power of attorney appointing Rae Ann as her attorney in fact. This document, dated October 28, 1998, was also made an exhibit to the complaint and provides that Leola is "a resident of Memphis, Shelby County, Tennessee."

The complaint further alleges that Thomas has requested that Rae Ann, pursuant to his durable power of attorney, turn over all bank accounts, investments, stocks and bonds, and the last will and testament of Leola and that Rae Ann refuses to deliver the last will and testament and the stock certificates belonging to Leola. The complaint also alleges that Rae Ann has turned over the requested documents to Mr. Sevier, her attorney, and that he will not deliver those documents to Thomas unless or until a complaint is filed and a court order has been entered requiring him to either turn the documents over or place the documents with the clerk and master of the Chancery Court of Shelby County, Tennessee, pending further orders of the court.

On April 26, 1999, Rae Ann filed her answer to the complaint and a petition for the appointment of a conservator and for an injunction against further removal of assets. The answer admits that Rae Ann has refused to turn over certain stocks, bonds, and other investment information to Thomas, but states that this refusal is in the best interest of Leola. The answer further admits that the stocks, bonds, and investment information has been turned over to Mr. Sevier and that he has refused to turn over those documents to Thomas without a court order in an effort to protect Leola.

The petition for the appointment of a conservator for Leola and the injunction against further removal of assets provides that because of Leola's advanced age and her mental and physical condition, she is unable to manage her own affairs. The petition states that Leola is suffering from senile dementia, progressive blindness due to her advanced age, and possibly a variety of other ailments. The petition states that Rae Ann is thirty-one years old, lives in Memphis, Shelby County, Tennessee and that she is the natural granddaughter of Leola. In the petition, Rae Ann seeks to be appointed conservator of Leola and points out that Rae Ann has lived with Leola most of her life and has been Leola's primary caretaker since the death of Leola's husband in June of 1995.

The petition further explains that since December 1985, Leola has resided in her home with Rae Ann and that on October 2, 1998, Thomas took Leola from her home in Memphis, Tennessee to his home in West Point, Mississippi. According to the petition, it was Rae Ann's understanding

---

[1] To avoid confusion, we will refer to the parties by their first names.

that Leola was going to Mississippi only for a short period of time and that sometime later, Rae Ann learned that Thomas had caused Leola to execute a power of attorney in his favor and that Thomas had closed the bank accounts and had taken the money and was seeking Leola's other assets.

Rae Ann requested in the petition that proper notice be issued to Leola; that a guardian *ad litem* be appointed; that the court appoint Rae Ann as conservator of the person and estate of Leola; that the court approve the property management plan and authorize Rae Ann to expend such funds from Leola's assets and income as may be necessary for the care of Leola; that the court transfer to the conservator the rights of Leola to manage her financial and medical affairs; that an accounting of Leola's assets be taken including the assets that Thomas has taken under his control; that Thomas be made to account for the whereabouts of any of Leola's assets which have been diminished or altered in any way; that a temporary injunction be issued prohibiting Thomas from taking control of Leola's assets being held in an account at Regions Bank or making any further effort to take control of any of Leola's other assets; and that all of Leola's assets, in whatever form, presently in the control of Thomas be turned over to the clerk of court or to the guardian ad litem or to another responsible and disinterested third party, pending further orders of the court.

Thomas contested the petition and the hearing on temporary injunction was held May 5, 1999, and by order entered June 4, 1999, the trial court ordered that each party be enjoined from disposing of or otherwise altering or transferring the present form of any of the assets belonging to Leola which are presently in their respective possession, except as otherwise directed in the order. The injunction ordered by the court applied to both the parties as well as their agents and attorneys. The trial court ordered that each party deliver to the opposing party a comprehensive list of all assets of Leola which are presently in his or her possession; that Sabrina D. Ball be appointed to act as the guardian *ad litem* for Leola; that each party shall provide Ms. Ball with a list of relevant witnesses; that Ms. Ball shall provide an accounting of all the assets of Leola which are in the possession of each of the parties; that Leola shall undergo a mental and physical examination by two competent physicians or other such health care professionals and that any resulting reports or previously available reports with regard to Leola's mental and/or physical condition shall be promptly exchanged between the parties and provided to the guardian *ad litem*; and that the $6,000.00 in cash belonging to Leola that is currently being held in the escrow account of Sevier Law Firm, P.C., attorney for Rae Ann, shall be used for the payment of any medical expenses, investigative expenses and/or guardian *ad litem* fees and expenses incurred in this matter.

After a nonjury trial, the trial court filed on July 26, 2000 its Findings of Fact and Conclusions of Law. The court found, *inter alia,* that Leola was legally domiciled in Shelby County, Tennessee on October 2, 1998 and was mentally incapable of voluntarily changing her domicile to West Point, Mississippi on that date; that she was legally incompetent on October 28, 1998, that the power of attorney and last will and testament executed on that date were void; that on April 22, 1999, she was mentally incompetent and the quit-claim deed executed in favor of Thomas C. Wynns, III for the 4228 Trudy Street, Memphis, Tennessee property was void; and that Leola is presently mentally and physically incapable of handling her affairs.

A "Final Order Appointing Conservators, and Resolving All Other Pending Matters" was entered on July 31, 2000. The order appointed the guardian ad litem, Sabrina D. Ball, as conservator of Leola Wynns's estate and appointed Thomas's wife, Emily Wynns, as conservator of the person of Leola Wynns.[2] The final order set forth directions to the conservator for handling the estate and authorized the disposal of certain property and payment of expenses. The order further provides:

> 7. Both parties, and their respective attorneys and/or agents, shall immediately turn over any of the Ward's assets which may be in their respective possession and/or control to the Conservator of the estate. The Defendant shall turn over to the Conservator the heart-shaped pendent belonging to the Ward. The Defendant shall also turn over all of the stocks, bonds, remaining cash, and other items which were deposited with her attorney, Charles Sevier, prior to the commencement of this action. This includes the Last Will and Testament of Leola P. Wynns, dated June 29, 1995, which the Conservator may elect to place into a safe deposit box, or to deposit with the Clerk of this Court. The Plaintiff shall turn over all cash, certificates of deposit, and other bank accounts which primarily hold the assets of the Ward, together with any bank statements and canceled checks on NBC account # 4744181 dated after June 9, 2000, so that the Conservator may establish a proper basis for her future accounting. The Plaintiff shall also turn over any and all information regarding the Ward's stock, Ford retirement account, Social Security payments, and any other income-producing asset, so that those payments may be re-directed as the Conservator chooses. Any furniture or appliances which belong to the Ward and are presently being used for her health, comfort or safety shall remain in the possession of the Conservator of her person.

> *          *          *

> 9. The Plaintiff shall reimburse $9,517.00 to the estate of Leola Wynns, according to a payment plan to be determined by the conservator.

> 10. The quit-claim deed executed on April 22, 1999, which purportedly transfers ownership of the house and property at 4228 Trudy, Memphis, Tennessee, bearing Shelby County Parcel I.D. Number 09004200018, and registered with the Shelby County Register under Instrument Number JH-3148, is hereby declared to be null and void. The Defendant or Sabrina Ball may register this Order

---

[2] Subsequently, Thomas was named as the conservator over the person of Leola Wynns.

with the office of the Shelby County Register, and with any other such official repository of records, giving notice to any person to whom it may concern that the quit-claim deed under Shelby County Register Instrument Number JH-3148 may be disregarded in all respects, and that said document creates no impairment or impediment on any real or personal property which may be owned by Leola P. Wynns.

The order also awards fees for the guardian ad litem in the amount of $5,000.00 and for the attorney representing the petitioner, Rae Ann, in the amount of $6,500.00. The original petition by Thomas was dismissed with prejudice.

Thomas has appealed and presents four issues for review, which we have rephrased as follows:

1. Whether the trial court erred in finding that it had jurisdiction to appoint a conservator for Leola?

2. Whether the trial court has jurisdiction to declare a Last will and testament void prior to the death of testatrix?

3. Whether the evidence preponderates against the finding of the trial court that Leola was mentally incompetent on October 2, 1998, when she went to the State of Mississippi and on October 28, 1998, when she executed a power of attorney, revocation of a power of attorney, and a Last will and testament?

4. Whether the trial court erred in allowing the guardian ad litem to file a report containing hearsay, in making a recommendation to the court, testifying on issues of mental competency, and allowing the guardian ad litem to receive a fee?

The appellee has also filed issues for review which we have rephrased as follows:

1. Whether the trial court erred by failing to enforce its orders concerning use of the ward's assets for the parties' own purposes?

2. Whether the trial court erred in appointing Thomas as conservator over the person of Leola because of his physical condition?

3. Whether the trial court erred by applying similar standards of conduct to both parties in regard to the personal use of Leola 's assets when the plaintiff, Thomas, was acting under an assigned power of attorney and defendant, Rae Ann, was not?

-5-

4. Whether the trial court erred in awarding only the amount of $6,500.00 as attorney's fees to Rae Ann's attorney?

5. Whether the trial court erred in its award of a limited amount of discretionary costs?

6. Whether the trial court erred by ordering the costs to be paid out of the estate?

7. Whether the trial court erred in admitting into evidence the affidavit of Harmon Robinson?

8. Whether the trial court erred in admitting the testimony of Dr. Ron Powell when Dr. Powell is not licensed in Tennessee?

Our review of this case is governed by T.R.A.P. 13(d), which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the evidence preponderates otherwise. T.R.A.P. 13(d); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993).

We will now consider appellant's issues. Issues 1 and 3 will be considered together:

1. Whether the trial court erred in finding that it had jurisdiction to appoint a conservator for Leola?

3. Whether the evidence preponderates against the finding of the trial court that Leola was mentally incompetent on October 2, 1998?

As previously noted, Thomas, the attorney in fact, filed a lawsuit to obtain Leola's assets held by the defendant, Rae Ann. Rae Ann, in turn, filed a petition seeking an appointment of conservator for Leola contending that she is a resident of Shelby County, Tennessee. The parties concede that the court would have no jurisdiction to appoint a conservator for Leola if she is not a resident of Shelby County. *See* T.C.A. § 34-3-101 (b) (2001)[3].

Thomas asserts that Leola had changed her residence and domicile to West Point, Mississippi and, therefore, is not subject to a conservatorship proceeding in Shelby County, Tennessee. On the other hand, Rae Ann asserts that Leola's mental condition was such that she could not make an effective decision to transfer her residence and domicile to the State of Mississippi. *See In Re: Conservatorship of Clayton*, 914 S.W.2d 84 (Tenn. Ct. App. 1995). There was extensive testimony from both lay and medical witnesses concerning Leola's mental competency. The trial court found

---

[3] **34-3-101. Action for appointment of conservator - Where brought.** . . .(b) An action for the appointment of a conservator shall be brought in the county of residence of the alleged disabled person.

that she did not have the mental competency to change her residence and domicile from Memphis, Tennessee to West Point, Mississippi in October of 1998.

As a preliminary matter, we note that everyone is presumed to be sane until the contrary is made to appear by satisfactory proof, and the burden of proof is on the party who avers insanity. *See Roberts v. Roberts*, 827 S.W.2d 788 (Tenn. Ct. App. 1991). Thus, the burden is on the defendant, Rae Ann, to prove that Leola was mentally incompetent when she went to Mississippi and, thus, unable to make a decision to change her domicile and further that she was mentally incompetent when she appointed her son, Thomas, as her attorney in fact. The record reflects that Leola's brother, Dalton Ellis Crawford, testified that she was able to take care of herself when she moved to Mississippi and that she told him that she was happy where she was and just wanted to stay home there.

The deposition of Dr. Ron Powell, her treating physician in Mississippi, was taken on August 25, 1999. He testified that he first saw Leola on October 9, 1998 shortly after she came to Mississippi, and he continually treated her on several occasions from that date through August of 1999 for various medical problems. He testified that on June 11, 1999, Leola was brought to his office in order for him to be in a position to make a statement about her mental competency. He stated that she was accompanied by her son, Thomas, and that Dr. Powell discussed with Leola where she wanted to live, and she stated she wanted to live in West Point, and that if she got to a point where she could not take care of her finances, then she wanted her son, Thomas, to do that for her. According to Dr. Powell, Leola stated to him that she was mentally competent enough to make her own decisions and it was his opinion that she was able to take care of herself.

Dr. Louis Rosa testified by deposition on May 22, 2000, and it apparently was conceded by the parties that at this time, May 22, 2001, Leola was unable to manage her own affairs. Dr. Rosa testified that he first saw Leola on January 6, 2000 after she had a fall. A brain scan had revealed a tumor, which turned out to be benign. He testified about the slow growth of the tumor and how it could affect mental capacity in an elderly person. He was furnished copies of her previous medical records, except the records from Dr. Powell, and he stated it was possible that she could have been lucid when she signed the power of attorney and the revocation of an earlier power of attorney. He stated, considering Dr. Krause's record of July of 1995, that she just looked like she "continued to go down hill. I don't know at what point she just went over the edge." He further testified that based on Dr. Mau's records, it appears that she had "an organic condition as dementia." He stated that in all probability he did not believe that she was competent in 1998 and in March or April of 1999. Lay testimony from friends of Rae Ann indicated that possibly six months prior to the time Leola went to Mississippi she was forgetful, and this was confirmed by the testimony of Rae Ann.

From our review of the record, considering the presumption of sanity, we find that the evidence preponderates against the trial court's finding that in October 1998 Leola was mentally incompetent to change her residence and domicile and execute a power of attorney and revocation of power of attorney. The evidence establishes that at the very least Leola had lucid intervals and there simply is no proof that on the specific dates involved Leola was not mentally competent. However, this does not answer the question of whether the evidence shows that Leola made a

decision to change her residence and domicile to Mississippi. The documents signed by Leola, the revocation of power of attorney, and the new power of attorney to Thomas, are quite specific that Leola is a resident of Memphis, Shelby County, Tennessee. Considering this proof and the fact that Thomas relies upon the power of attorney, premising his complaint thereon, we find that Leola was a resident of Memphis, Shelby County, Tennessee. Therefore, we agree with the trial court, but for different reasons; that Leola was a resident of Memphis, Shelby County, Tennessee at the time the petition for conservatorship was filed.

The question we are presented with, however, is whether the trial court properly appointed a conservator based upon the pleadings filed. We must bear in mind that the adversarial proceeding in existence was a suit by Thomas against Rae Ann. Rae Ann filed a conservatorship in that cause, and it appears from the record that there was no service of process on Leola, the subject of the conservatorship. T.C.A. § 34-1-106 provides:

> **34-1-106. Petition for appointment in fiduciary.** - (a) The petition for the appointment of a fiduciary shall be served in accordance with the Tennessee Rules of Civil Procedure.
>
> (b) Notice by certified mail with return receipt requested shall be given by the clerk of the court to the closest relative or relatives of the respondent required to be named in the petition and to the person, if any, having care or custody of the respondent or with whom the respondent is living.

Although the court appointed a guardian ad litem, as required by T.C.A. § 34-1-107, the reports of the guardian ad litem do not indicate that the guardian ad litem complied with the specific provisions of T.C.A. § 34-1-107 (d)(2)(3)(4). Moreover, T.C.A. § 34-1-108 provides for explicit notice to the respondent of the date set for the hearing, and there is no proof of service to show compliance with this requirement.

Nevertheless, a nonjury trial was held on July 18, 2000 to July 24, 2000, resulting in the decision of the court heretofore stated. Notwithstanding the procedural defects in the proceeding, it appears from the record that at least at the time of the hearing, Leola was not capable of managing her own affairs and some intervention by the court was necessary. As this Court noted in *In Re: Conservatorship of Clayton*, 914 S.W.2d 84 (Tenn. Ct App. 1995):

> The courts are ultimately responsible for the property of persons for whom they appoint conservators or guardians. *Hinds v. Buck*, 177 Tenn. at 448, 150 S.W.2d at 1072. They retain continuing control over guardians and conservators because the persons who accept these appointments become "quasi-officials" of the court appointing them. *See Logan v. Graper*, 155 Tenn. 565, 568, 4 S.W.2d 955, 956 (1927). Part of this control includes the authority

-8-

to order an accounting when a conservatorship is terminated. Tenn. Code Ann. § 34-13-108(e) (Supp. 1994).

*Id.* at 92.

Although there are procedural and evidentiary questions involved concerning the conservatorship proceeding, there is a chancery court order appointing a conservator in July of 2000 that justified the conservator to take over Leola's assets. As this Court noted in *Clayton*, the conservator is an officer of the court from the time of the appointment, and now that the conservatorship has ended by the death of Leola,[4] it is proper for the conservator to file the proper accounting. *See* T.C.A. § 34-3-108 (e).

We will now consider Issue 2:

> 2. Whether the trial court has jurisdiction to declare a Last will and testament void prior to the death of testatrix?

In the trial court's findings of fact and conclusions of law, the trial court stated that the last will and testament executed by Leola on October 28, 1998, was void, but this provision was not carried forward in the final decree entered in the cause. We do find it necessary, however, to address this finding, although not in the final decree.

T.C.A. § 32-3-101 (2001) provides:

> **32-3-101. Operation of will.** - A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all of the real estate belonging to the testator, or in which the testator had any interest at the testator's decease, unless a contrary intention appear by its words in context.

Under this statute, the will must take effect as if it had been executed immediately before the death of the testator. *Bell v. Shannon*, 367 S.W.2d 761 (Tenn. 1963). The provisions for the contest of a will are explicitly set out in statutes, T.C.A. § 32-4-101 - 109. The statutory proceeding to contest a will is analogous to the probate of a will in solemn form. *See Bearman v. Camatsos*, 385 S.W.2d 91 (Tenn. 1964); *Arnold v. Marcum*, 352 S.W.2d 936 (Tenn. Ct. App. 1961). Of course, a will cannot be probated until after the death of the testatrix or testator and it is clear that the will is subject to revocation at any time prior to becoming effective upon the death of the testator or testatrix. "The capacity to make a will must be adjudged following the offer of probate of the will and must be determined as of the specific time the will was made." *Gill v. Hendrix*, 913 S.W.2d 184, 194 (Tenn. Ct. App. 1996). In the instant case, there was no justiciable issue concerning the

---

[4] It is a post-judgment fact that Leola died on December 2, 2001.

1998 will or any other will of Leola because she was not deceased. In effect, consideration of the 1998 will was a declaratory judgment, which is not proper in the absence of a justiciable controversy. The declaratory judgment act does not give the courts jurisdiction to render advisory opinions to assist the parties or to allay their fears as to what may occur in the future. *Parks v. Alexander*, 608 S.W.2d 881 (Tenn. Ct. App. 1980) cert. denied, 451 U.S. 939 (1981). Thus, the finding of the trial court that Leola's 1998 will is invalid is vacated.

We will now consider Issue 4:

> 4. Whether the trial court erred in allowing the guardian *ad litem* to file a report containing hearsay, in making a recommendation to the court, testifying on issues of mental competency, and allowing the guardian *ad litem* a fee?

Appellant's entire argument on this issue is premised on the decision of this Court in *McKeehan v. McKeehan*, No. 02A01-9407-CV-165, 1995 WL 695124 (Tenn. Ct. App. Nov. 21, 1995); however, it appears that the appellant's reliance on this case is misplaced. *McKeehan* involved a child custody case, and the primary issue involved was the best interest of the child. In the instant case, the appellant objects to the guardian *ad litem* testifying as to her opinion of Leola's mental competency. The guardian *ad litem* testified concerning her meetings with Leola and her observations from these meetings. She listed details of conversations and the appearance and conduct of Leola when she was personally involved with her. "Tennessee law permits a lay witness to testify regarding the sanity of an individual if a factual foundation is laid that is sufficient to justify the lay opinion and give it credibility." *Neil P. Cohn, et al., Tenn. Law of Evid.,* § 701.4 at 452 (3d ed. 1995).

We are not sure what appellant's complaint is with the report of the guardian *ad litem,* aside from the opinion testimony therein of Leola's competency, but we note that the guardian *ad litem* is required to make a written report to the court. T.C.A. § 34-1-107 (f)(2001) provides:

> **34-1-107**, **Guardian ad litem. -** . . . (f) The guardian ad litem shall make a written report to the court at least three (3) days prior to the date set for hearing the matter. The written report shall provide the court with the results of the guardian ad litem's investigation. The guardian ad litem's report shall specifically state whether:
>
> (1) (A) The respondent wants to contest:
>     (i) The need for a fiduciary;
>     (ii) Merely the person to be the fiduciary; or
>     (iii) Neither;
>
>     (B) If the respondent wants to contest any portion of the proceeding and the guardian ad litem's opinion is that there should be

a fiduciary appointed, the guardian ad litem shall identify the adversary counsel or indicate there is none and request the appointment of an attorney ad litem;

(2) A fiduciary should be appointed and, if so, whether:
   (A) The proposed fiduciary should be appointed; or
   (B) Someone else, identified by the guardian ad litem, should be appointed;

(3) The proposed property management plan should be adopted and, if not, what changes should be considered.

(4) The respondent will attend the hearing and, if, in the opinion of the guardian ad litem it is not in the respondent's best interest to attend, why.

Admittedly, the guardian *ad litem's* report did not completely detail the requirements of the statute, nevertheless, she was authorized to file a report to be considered by the court.

As to the guardian *ad litem* fee, the court is authorized to award such a fee by T.C.A. § 34-1-114, which provides:

> **34-1-114. Charging of costs of proceedings. -** (a) If a fiduciary is appointed, the costs of the proceedings, which are the court costs, the guardian ad litem fee, the required medical examination costs and the attorney's fee for the petitioner, shall be charged against the property of the respondent to the extent the respondent's property exceeds the supplemental security income eligibility limit. If no fiduciary is appointed, the costs of the proceedings shall be charged against the petitioner. The guardian ad litem fee and the attorney's fee for the petitioner shall be established by the court. If a fiduciary is cited for failure to file an inventory or accounting, the costs incurred in citing the fiduciary, in the discretion of the court, may be charged to and collected from the cited fiduciary.
>
> (b) Notwithstanding the provisions of subsection (a), if a petition for a standby fiduciary is filed pursuant to § 34-1-119(c), and regardless of whether a standby fiduciary is appointed, the costs of the action shall be charged against the petitioner.

In any event, there was sufficient evidence in the record from other sources to support the chancellor's findings, and if there was any error in the admission of the testimony of the guardian *ad litem* it was harmless error.

-11-

Although Thomas does not raise an issue concerning the quit-claim deed to 4228 Trudy executed by his mother, Leola, on April 22, 1999, we feel it is important to discuss this matter. Prior to this time, Leola had executed a power of attorney, dated October 28, 1998, designating Thomas as her attorney in fact.

Under Tennessee law, "[a] person authorized to act on behalf of another by virtue of an unrestricted power of attorney has [a] confidential relationship with [the] person who executed the power of attorney." *See Crain v. Brown*, 823 S.W.2d 187, 194 (Tenn. Ct. App. 1991)(citing *Mitchell v. Smith*, 779 S.W.2d 384 (Tenn. Ct. App. 1989)). Furthermore, the existence of a confidential relationship followed by a transaction wherein the dominant party receives a benefit from the other party creates a presumption of undue influence which be rebutted only by clear and convincing evidence of the fairness of the transaction. *See Matlock v. Simpson*, 902 S.W.2d 384, 385 (Tenn. 1995).

In the present case, there is no evidence in the record to rebut the presumption of undue influence. Although the evidence preponderates against the trial court's finding that Leola was incompetent when she executed the deed, we nevertheless affirm the trial court's holding that the quit claim deed is void, not because Leola was incompetent, but because there is no evidence in the record to rebut the presumption of undue influence.

We will now consider appellee's issues. As to Issues 1, 2, and 3, appellee points to no place in the record where these issues are involved in the proceeding as required by Rule 6, Rules of the Court of Appeals. Moreover, appellee makes no legal argument and cites no supporting authority, and these issues will not be considered further by this Court. *See Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772 (Tenn. Ct. App. 1990); *State ex rel. Dept. of Transportation v. Harvey*, 680 S.W.2d 792 (Tenn. Ct. App. 1984).

We will consider issues four, five, and six together:

> 4. Whether the trial court erred in awarding only the amount of $6,500.00 as attorney's fees to Rae Ann's attorney?
>
> 5. Whether the trial court erred in its award of a limited amount of discretionary costs?
>
> 6. Whether the trial court erred by ordering the costs to be paid out of the estate?

Appellee first asserts that the trial court should have awarded the appellee a greater amount of attorney's fees. The appellee states, "[t]he trial court's award of $6,500.00 was, in some ways, generous, but it was in fact arbitrary. The trial court made that decision without permitting the defendant's attorney to submit a statement of fees." Appellee points to no place in the record where

such action appears and cites no authority, and we will not consider this issue further. ***See Wilhite v. Brownsville Concrete Co., Inc., supra.***

Appellee next asserts that pursuant to Tenn.R.Civ.P. 68, she submitted two detailed settlement offers to the appellant which were declined outright. She asserts that this unnecessarily prolonged the litigation and caused the parties to go to the time, trouble, and expense of a six-day trial. The proceeding in which the proposed settlement was filed involved the conservatorship proceeding and was not a proper subject of an "offer of settlement." The trial court had to consider the evidence in the case and the legal authorities in order to determine whether a conservatorship was authorized. The agreement or disagreement of the appellant would have no effect on the trial court's decision in that regard. The trial court properly disregarded the offer of settlement in its consideration of fees and costs. As to Tenn.R.Civ.P. 54, appellee has pointed out no abuse of discretion on the part of the trial court, and we find none from the record. Appellee has cited no authority in the argument that the attorney's fees and costs should be assessed against appellant personally instead of being paid out of the estate. Therefore, we will consider this issue no further.

As to issues seven and eight, appellee has presented no argument, and we will consider these issues waived.

In sum, we vacate the trial court's findings that in October, 1998, Leola Wynns was mentally incompetent to change her domicile and to execute a power of attorney and revocation of power of attorney on the specific date involved. We also vacate the finding of the trial court that the 1998 will of Leola Wynns is void. The order of the trial court is affirmed in all other respects. The case is remanded to the trial court for further proceedings concerning the termination of the conservatorship and the accounting necessitated thereby. Costs are assessed one-half against the appellant, Thomas Clinton Wynns, III, and his surety, and one-half against the appellee, Rae Ann Cummings.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.